Jodie W. Cheng (SBN 292330)
jodie@jwc-legal.com
**JWC LEGAL**
445 South Figueroa Street, 31st Floor
Los Angeles, California 90071
(415) 293-8308

*Counsel for Plaintiffs*
*Candyman Kitchens Inc.;*
*Can You Imagine That! Confections Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDYMAN KITCHENS INC.; CAN YOU IMAGINE THAT! CONFECTIONS INC. | CASE NO. 2:20-cv-841 |
| Plaintiffs, | **COMPLAINT FOR** |
| | **TRADEMARK INFRINGEMENT & DILUTION (15 U.S.C. §§ 1114(1), 1125(a), 1125(c));** |
| | **FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a));** |
| v. | **TRADE DRESS INFRINGEMENT & DILUTION (15 U.S.C. § 1125(a), (c));** |
| | **COMMON LAW UNFAIR COMPETITION;** |
| SWEETS INDEED, LLC; MARIE E. DANNETTELLE; GREGORY NATHANSON | **FALSE ADVERTISING (CAL. BUS. & PROF. CODE § 17500 *et seq.*);** |
| | **UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200 *et seq.*)** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Pursuant to the Court's jurisdiction conferred at least by 15 U.S.C § 1121, 28 U.S.C. §§ 1331, 1338(a) & (b) and 1367, and as further described below, Plaintiffs Candyman Kitchens Inc. ("Candyman Kitchens") and Can You Imagine That! Confections Inc. ("Can You Imagine That") (collectively with Candyman Kitchens, "Candyman" or "Plaintiffs") submit this Complaint against Sweets Indeed, LLC ("Sweets Indeed"), Marie E. Dannettelle, and Gregory Nathanson (collectively, "Defendants"); and allege as follows:

## INTRODUCTION

1.     This action arises from Defendants' deliberate scheme to manufacture and promote replica products—which Defendants themselves described as "the same" as Plaintiffs Candyman's products, including bearing Candyman's marks, packaging, and design—for sale to Candyman's customers.

2.     Candyman and its creative, novelty candy products are the brainchild of David Klein, who invented the world-famous Jelly Belly® in 1976, and his daughter, Roxanne (Roxy) Klein.  As a well-known figure in the candy industry and after inventing Jelly Belly®, Mr. Klein "would go on to appear on several talk shows and even pose for People Magazine—and subsequently became renowned as the 'Candyman'," as well as the subject of a 2010 feature-length documentary film.

3.     Candyman's mission was to provide novelty candy and confectionary that are fun, memorable, distinctive, and unusual.  In Candyman's view, novelty candy should not only taste good but also inspire playfulness, whimsy, and sometimes even shock.  Candyman succeeded in its mission with its candy products designed to resemble fantastical or shocking objects, such as beautiful, multi-colored edible candy "sand art" (Sandy Candy), candy Blood Clots and Crime Scene Candy packaged in plastic vials to resemble lab specimens, and candy Boogers from zombies, unicorns, dragons, etc.  These lighthearted and attention-

grabbing confections attracted the attention and curiosity of consumers, and were popular items, particularly during Halloween and for parties.

4. Candyman's products gained widespread attention, in part because they are associated with Mr. Klein—who has been described by others as a "visionary when it comes to new tastes"; "destined to be in the candy business"; "kind, whimsical, and generous"; "unique in every facet"; and "a good person" who "breathe[s] life into" candy products—and his family, and their unwavering dedication to innovative candy creations. Candyman's products are sold across the country and around the world, directly to consumers (often from orders placed through Candyman's websites), as well as through retailers like Amazon and Candy Warehouse.

5. In 2017, Candyman relocated its manufacturing facility and business operations from Southern California to Florida. Rather than transporting all the manufacturing machinery and equipment across the country, Candyman sold its manufacturing facility in Covina, CA and acquired facilities in Florida. Candyman planned to continue operating its business in Florida, just as it had done in California for many years.

6. Thus, Candyman's Covina, CA manufacturing facility was sold to another Southern California-based candy company, Defendant Sweets Indeed. At the time of the sale, Sweets Indeed primarily focused on providing candy sprinkles and confetti, most often used as dessert toppings and cake decorations.

7. The terms of the sale were memorialized in the parties' Asset Purchase Agreement, which expressly excluded all Candyman's trademarks, URL domains, goodwill, and other non-fixed assets from the sale. In fact, on several occasions, Defendant Dannettelle, founder of Sweets Indeed, wrote to Mr. Klein to confirm that Plaintiffs' trademarks and business remained property of Plaintiffs.

8. Although Defendants wrote that they were not interested in Plaintiffs' trademarks, brands, or business; after the sale, Sweets Indeed proceeded to rip-off

Candyman's products and mislead Candyman's customers into believing that Candyman and Sweets Indeed are the same company or somehow related entities.

9.     Sweets Indeed made its wrongful intentions abundantly clear in a letter to Candyman's customers sent immediately after the purchase of the Covina, CA facility.  Tellingly, Sweets Indeed wrote: "This letter is part of an ongoing effort to reach out to former customers of Can You Imagine That and ensure you are aware that **we are continuing to make many of the same products** as those that you were previously ordering."  The letter encouraged the customers to purchase from Sweets Indeed by offering a discount "[i]n order to help the transition."

10.     Thereafter, Sweets Indeed began selling novelty candies—specifically, the candy Boogers, candy Blood Clots, Crime Scene Candy, and Sandy Candy—that were virtually identical to Candyman's products.  Sweets Indeed's copycat products even bear Candyman's trademarks and trade dress, and some are even advertised under Plaintiff Can You Imagine That's company name.

11.     Sweets Indeed intentionally caused such pervasive confusion that industry professionals, candy retailers, and customers were unable to discern the origin of the candy products.  For example, in late 2019, a customer service representative from Candy Warehouse, a large online bulk candy seller, stated a mistaken belief that "Sweet[s] Indeed and Can You Imagine [That] **are together** . . . **either the same company or merged.**"  When asked what Sweets Indeed products are carried by Candy Warehouse, the representative provided a link to a webpage displaying all products from Can You Imagine That.

12.     As a result of Sweets Indeed's copycat products, Candyman has seen a drastic reduction in sales of its legitimate products, at least because consumers and retailers are unknowingly ordering rip-off products from Sweets Indeed.  Some

major resellers, including Amazon, have even suspended Candyman's ability to sell while Sweets Indeed continues to advertise, promote, and sell its copied products.

13.     Candyman submits this Complaint seeking monetary damages, injunctive relief, and other remedies for the Defendants' intentional wrongful conduct and violations.

## PARTIES

14.     Candyman Kitchens Inc. is a corporation organized under the laws of the State of Florida, with its principal place of business at 8749 NE Jacksonville Rd., Anthony, FL 32617.

15.     Can You Imagine That! Confections Inc. is a corporation organized under the laws of the State of California, with its principal place of business at 8749 NE Jacksonville Rd., Anthony, FL 32617.

16.     On information and belief, Sweets Indeed, LLC is a limited liability corporation organized under the laws of the State of Delaware, with its principal place of business at 1032 E. Edna Place, Covina, CA 91724.

17.     On information and belief, Marie E. Dannettelle is an individual residing in the State of California who may be contacted at 611 N. Vista Bonita Ave, Glendora, CA 91741.  Ms. Dannettelle is the founder of Sweets Indeed.

18.     On information and belief, Gregory Nathanson is an individual residing in the State of California who may be contacted at 1032 E. Edna Place, Covina, CA 91724.  Mr. Nathanson is the Chief Executive Officer and an investor in Sweets Indeed.

## JURISDICTION AND VENUE

19.     This is an action for trademark and trade dress infringement, false designation of origin, trademark, and trade dress dilution, false advertising and unfair competition.  This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. ("the Lanham Act"); California Business & Professions Code

§ 17500 *et seq*.; California Unfair Competition Law Cal. Bus. & Prof. Code §§ 17200 *et seq*.; and common law.

20. This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C § 1121 (action arising under the Lanham Act) and 28 U.S.C. §§ 1331 (federal question), 1338(a) & (b) (action relating to trademarks and unfair competition), and 1367 (supplemental jurisdiction over state law claims).

21. This Court has specific and general personal jurisdiction over Defendants pursuant to due process and the California Long Arm Statute because Defendant Sweets Indeed has an regularly established place of business in this District from which it conducts business; Defendant Dannettelle resides within this District; Defendant Nathanson resides and does business within this District; and Defendants have committed and continue to commit acts of infringement and unfair competition in violation of federal and state laws, and knowingly place infringing products into the stream of commerce, including within the State of California and this District. These acts by Defendants cause injury to Plaintiffs within this District.

22. Further, upon information and belief, Defendants also derive substantial revenue from the sale of infringing products within this District and in interstate commerce; and Defendants anticipate and expect their acts to have consequences within this District.

23. Venue is proper in this District under 28 U.S.C. §§ 1391, 1367(a), and 1400(a). A substantial part of the events giving rise to the claims occurred in this District; Defendants regularly conduct business within this District, including having a regularly established place of business within this District, or reside within this District; and Defendants have committed and continue to commit acts of infringement and unfair competition within this District. Defendants' wrongful acts giving rise to this lawsuit, and the resulting harm to Plaintiffs, have occurred and are occurring in the State of California and this District.

**FACTUAL ALLEGATIONS APPLICABLE TO PLAINTIFFS' CLAIMS**

I.    Plaintiffs Can You Imagine That and Candyman Kitchens, and Their Products

24.    Plaintiff Can You Imagine That was founded in 1995 by David Klein, who has been a widely known figure in the candy industry since at least 1976 when he invented the internationally known Jelly Belly® jelly bean.  Mr. Klein "would go on to appear on several talk shows and even pose for People Magazine—and subsequently became renowned as the 'Candyman'," as well as the subject of a feature-length documentary film.  (THE CANDYMAN'S COMEBACK, Jan. 16, 2019, *available at* https://www.eriereader.com/article/the-candymans-comeback; *see also* 10 QUESTIONS FOR CANDYMAN DAVID KLEIN, May 30, 2008, *available at* http://candyaddict.com/blog/2008/05/30/10-questions-for-candyman-david-klein/.)

25.    Mr. Klein's activities and involvement in the candy industry, including his companies Plaintiffs Can You Imagine That and Candyman Kitchens, frequently garner public support and praise.  (*E.g.*, GLENDORA MAN WHO INVENTED JELLY BELLY THINKS HE'S FOUND THE NEXT BIG THING, Jan. 27, 2016, *available at* https://www.sgvtribune.com/2016/01/27/glendora-man-who-invented-jelly-belly-thinks-hes-found-the-next-big-thing/.)

26.    After selling his rights in Jelly Belly®—a transaction for which Mr. Klein and many others view was a "raw deal" and the subject of many articles and a documentary film—Mr. Klein devoted substantial efforts, time, and investment into new candy inventions and ventures, including Plaintiffs Can You Imagine That and Candyman Kitchens.  (*E.g.*, BEAN COUNTER:  THE REVIVAL OF AMERICA'S JELLY BEAN KING, Mar. 28, 2016, *available at* https://www.vice.com/en_us/article/53q443/bean-counter-the-revival-of-americas-jelly-bean-king; THE CANDYMAN'S COMEBACK, Jan. 16, 2019, *available at* https://www.eriereader.com/article/the-candymans-comeback.)

27.     Plaintiffs create, manufacture, market, and sell novelty candy. Plaintiffs' products include **Sandy Candy** (multicolored candy "sand" to create edible candy art); candy **Blood Clots** and **Crime Scene Candy** (candy that is designed and packaged to resemble lab specimens); and candy **Boogers** (loose candy pieces), such as Zombie Boogers, Unicorn Boogers, Ghost Boogers, and Dragon Boogers.

28.     Consumers associate Plaintiffs' novelty products with fun, whimsy, and sometimes even shock that attracts consumers' attention and curiosity. Plaintiffs' products are particularly popular during holidays like Halloween, as well as for children's and themed parties.

29.     Plaintiffs' products have gained widespread attention, in part because they are associated with Mr. Klein—who has been described by others as a "visionary when it comes to new tastes"; "destined to be in the candy business"; "kind, whimsical, and generous"; "unique in every facet"; and "a good person" who "breathe[s] life into" products—and his family.  (*E.g.*, GLENDORA MAN WHO INVENTED JELLY BELLY THINKS HE'S FOUND THE NEXT BIG THING, Jan. 27, 2016, *available at* https://www.sgvtribune.com/2016/01/27/glendora-man-who-invented-jelly-belly-thinks-hes-found-the-next-big-thing/; MEET THE CANDYMAN: INVENTOR OF JELLY BELLY SETS UP SHOP IN CLEARWATER, Dec. 8, 2016, *available at*       https://www.tampabay.com/things-to-do/consumer/meet-the-candyman-inventor-of-jelly-belly-sets-up-shop-in-clearwater/2305431/; THE CANDYMAN'S COMEBACK, Jan. 16, 2019, *available at* https://www.eriereader.com/article/the-candymans-comeback.)

30.     For example, while she was still in high school, Roxy Klein created Sandy Candy, which are multicolored, flavored dextrose powders used to create edible "sand art."  Can You Imagine That then transformed Ms. Klein's idea into a marketable product that was, and still is, distributed and sold around the world. (*E.g.*, BEAN COUNTER:  THE REVIVAL OF AMERICA'S JELLY BEAN KING, Mar. 28,

2016, *available at* https://www.vice.com/en_us/article/53q443/bean-counter-the-revival-of-americas-jelly-bean-king.)

31. Can You Imagine That and its Sandy Candy products became large successes in the novelty candy industry, which associated Sandy Candy with the Kleins. (WOMEN TALK: 10 QUESTIONS WITH CANDY CREATOR ROXY KLEIN, Oct. 31, 2013 ("Roxy, 35, is known as Candy Creator at Can You Imagine That! Inc., the $1 million plus candy manufacturing company she co-owns with her dad, David Klein, the man behind Jelly Belly jelly beans . . . . [S]ince the age of three, Roxy has been coming up with new and imaginative candy product ideas.  Since then, she has become known for her innovative and original novelty creations that now fill candy store shelves around the country."), *available at* https://womenyoushouldknow.net/women-talk-10-questions-with-candy-woman-roxy-klein/; 10 QUESTIONS FOR CANDYMAN DAVID KLEIN, May 30, 2008 ("From the age of 3, Roxy was always trying to come up with a new candy product . . . . When Roxy came up with the idea for Sandy Candy I was very excited and I knew that it would be a big hit.  I did what I could to help her but 99 percent of the credit goes to Roxy.  She is not only very very smart, but I have never seen anyone who works as hard as she does."), *available at* http://candyaddict.com/blog/2008/05/30/10-questions-for-candyman-david-klein/.)

32. Below are exemplary excerpts from the webpage for Plaintiffs' Sandy Candy Fundraiser Kit on Amazon:





Sandy Candy Fundraiser Kit - 10 Flavor
Sandy Candy Kit w/ 250 5" Tubes - Sand
Candy Art For School Fundraisers, Kids
Birthday Party Activities, Games, & Party
Favors
by Sandy Candy
★★★★☆ ✕   3 ratings

**Product description**

**Sandy Candy: We Bring Candy, You Add The FUN!**

Are you looking for a way to raise money for a cause while keeping the atmosphere fun and light?

It's safe to say: you've found your solution.

What if we told you that you can now organize an unforgettable party armed with one, simple kit?

**Introducing The Sandy Candy Kit**

Sandy Candy was invented by Roxy Klein, who drew inspiration from her father, David Klein, the inventor of the Jelly Belly.

Quickly gaining fame via word of mouth, Sandy Candy is a candy version of sand art.

**Go Far With Sandy Candy!**

You can use our kit to create custom candy creations, following the color scheme of your teen's high school colors or your young adult's college colors. You can use the tubes to fundraise for the charity of your choice, raise money for a good cause at the office, or get a little boost from the congregation.

**10 Mouthwatering Flavors**

Each kit contains 10 of the following flavors: Sour Lemon, Sour Bubble Gum, Sour Blue Raspberry, Sour Cherry, Sour Apple, Sweet Banana, Sweet Orange, Sweet Watermelon, + 2 mouth watering surprise flavors!

And of course, 250 5" tubes so everyone can join in on the fantastic DIY candy making experience!

**Get Your Own Sandy Candy Fundraiser Kit & Raise Money the Fun Way!**

**Click Add To Cart While Supplies Last!**

33.     Similarly, Plaintiffs' candy **Boogers** products have also attracted the attention and support of candy enthusiasts, who associate candy Boogers with Plaintiffs and Mr. Klein.

34.     For example, one blogger praised Plaintiffs' Zombie Boogers product for "hav[ing] great names, and look like what they are called but are sweet and yummy" and originating "[f]rom the Candyman, David Klein, inventor of the Jelly Belly Jelly Bean." The positive commentary was accompanied by images of Mr. Klein and Plaintiffs' Zombie Boogers and other novelty candy:




(KENT FAMILY MAGIC CIRCUS DAILY BLOG, Jan. 31, 2012, *available at* http://victorkent.blogspot.com/2012/01/im-posting-these-tonight-without-story.html.)

35.    Plaintiffs' products have been marketed and sold across the country and around the world, directly to consumers (often from orders placed through Candyman's websites), as well as through authorized retailers like Amazon and Candy Warehouse.

36.    Plaintiffs' distinctive candy products—Sandy Candy, Crime Scene Candy, candy Blood Clots, and candy Boogers products—(1) have been sold and are sold in distinctive and novel packaging that have become indicative of Plaintiffs' fantastical candy creations; (2) bear trademarked names and descriptions; and (3) have been sold and are sold under the Can You Imagine That, Nifty Candy Company, or Candyman Kitchens names.  Plaintiffs' products have exclusively and continuously used their distinctive design, packaging, marks, and brands since their first release.

37.   Below are images of Plaintiffs' **Sandy Candy** products:





1

38.   Below is an image of Plaintiffs' **Crime Scene Candy** product:

2



13

39.   Below are images of Plaintiffs' candy **Blood Clots** products:




40.    Below are images of Plaintiffs' candy **Boogers** products, namely **Zombie Boogers**, **Unicorn Boogers**, **Ghost Boogers**, and **Pig Boogers**:







II.    Plaintiffs' Marks & Intellectual Property

41.    Plaintiffs have rights in registered and common law trademarks undergoing application/examination for registration, which have been exclusively and continuously in use by Plaintiffs since their first use, including:

- SANDY CANDY®
- CRIME SCENE CANDY®
- CANDY BLOOD CLOTS™
- BOOGERS™

42.    SANDY CANDY®—Attached as **Exhibit A** is a true and correct copy of U.S. Registration No. 2,415,707.  Plaintiff Can You Imagine That has been using the SANDY CANDY® mark in commerce in connection with edible candy sand art since at least 1998 and filed a trademark application for this mark on December 27, 1999.  The SANDY CANDY® mark, along with all other intellectual property and rights thereto, were transferred and assigned to Plaintiff Candyman Kitchens in May 2017

43.    CRIME SCENE CANDY®—Attached as **Exhibit B** is a true and correct copy of U.S. Registration No. 5,670,600.  Plaintiff Can You Imagine That first used the CRIME SCENE CANDY® mark in connection with candy by April 30, 2009; and Plaintiff Candyman Kitchens filed a trademark application for this mark on August 21, 2018.

44.    CANDY BLOOD CLOTS™—Attached as **Exhibit C** is a true and correct copy of U.S. Application Serial No. 88/666,939.  The CANDY BLOOD CLOTS™ mark was used in commerce by Plaintiffs, in connection with candy, at least as of March 24, 2011.  Plaintiff Candyman Kitchens filed a trademark application for this mark on October 24, 2019.

45.    BOOGERS™—Attached as **Exhibit D** is a true and correct copy of U.S. Application Serial No. 88/748,048. The BOOGERS™ mark was used in commerce by Plaintiffs, in connection with candy, at least as of March 24, 2011.

Plaintiff Candyman Kitchens filed a trademark application for this mark on January 6, 2020.

46.     As a direct result of their novel and distinctive design, packaging, and marks—as well as the substantial time, money, and resources invested in promoting the marks and brands under which the products are sold—Plaintiffs' products became popular with customers of novelty candy.  The appearance, marks, and brands of Plaintiffs' products have become widely recognized and uniquely associated with Mr. Klein's companies, Plaintiffs Can You Imagine That and Candyman Kitchens, as their source.

47.     In addition to being known and associated with Mr. Klein's companies and wide-spread reputation in the candy industry, Plaintiffs' products and marks have independently earned substantial praise and goodwill from customers and consumers and achieved secondary meaning as an identifier of high-quality, uniquely creative, novelty candy.  Positive commentary and praise for Plaintiffs' products have been submitted by customers, often in the form of online product reviews displayed alongside images of Plaintiffs' products.  (*See supra*, ¶¶ 26–34.)

III.     Defendants' Knowledge and Notice of Plaintiffs' Intellectual Property

48.     Defendants are well aware that Plaintiffs own and use the marks, as evinced at least by (1) Plaintiffs' federal registrations and applications; (2) Defendants' written statements in multiple emails recognizing that Plaintiffs own the marks; and (3) the recent Opposition before the U.S. Trademark Trial and Appeal Board ("TTAB") filed by Plaintiffs in response to Defendants' attempt to register the BOOGERS mark as their own.

49.     In 2017, as part of Plaintiffs' relocation to Florida, Defendant Sweets Indeed, led by Defendant Dannettelle, acquired Can You Imagine That's manufacturing facility in Covina, CA.  As memorialized in the Asset Purchase Agreement, as well as the written communications surrounding the transaction, Plaintiffs' trademarks (as well as goodwill, URL domains and websites, computer

hardware and software, and other non-fixed assets) were expressly excluded from the purchase.

50.    In fact, on information and belief, while negotiating the terms of the transaction in February 2017, Defendant Dannettelle wrote to Mr. Klein that Defendants were "not interested in buying the business outright" and Plaintiffs "would keep the . . . Can You Imagine That, Inc. brand as [Defendants] are not interested in taking that on." Notably, Ms. Dannettelle asked Mr. Klein whether he understood that he (through his companies) would "get to keep [his] names and trademarks." Mr. Klein confirmed to Ms. Dannettele that "[n]o trademarks go with the deal," Plaintiffs "would retain the [S]andy [C]andy trademark," and "[t]he company was never part of the deal."

51.    As part of Plaintiffs' relocation to Florida, Can You Imagine That transferred all its intellectual property and rights to Candyman Kitchens.

52.    On February 13, 2019, Defendant Sweets Indeed filed an application for registration of the BOOGERS mark (U.S. Application Serial No. 88/299,940). Plaintiff Candyman Kitchens timely opposed Sweets Indeed's application. Attached as **Exhibit E** is a true and correct copy of the Opposition filed by Candyman Kitchens (hereinafter, "Opp.").

53.    Among other facts, the Opposition alleged that Candyman Kitchens is the "owner of all right, title and interest in and to the mark BOOGERS used alone or in combination with a design . . . for a variety of confectionary and candy." (Opp. ¶ 1.) Candyman Kitchens explained that it had "established common law rights in [the] BOOGERS Marks through continuous use on its candy products . . . since 2011." (Opp. ¶¶ 3–4.) The marks for which Candyman Kitchens held common law rights included, but is not limited to, ZOMBIE BOOGERS, UNICORN BOOGERS, and DRAGON BOOGERS. (Opp. ¶ 2.)

54.    Further, Candyman Kitchen's Opposition described the confusion that would likely arise if Sweets Indeed were permitted to use the mark in connection

with its products.  (*E.g.*, Opp. ¶ 12 ("Upon seeing [Sweets Indeed]'s mark, members of the public are likely to be confused, mistaken, or misled into believing that [Sweets Indeed] has obtained a license from [Candyman Kitchens] or that [Sweets Indeed] is otherwise affiliated or connected with, or sponsored by [Candyman Kitchens], or that [Candyman Kitchens] has endorsed [Sweets Indeed]'s goods.")

55.    On June 20, 2019, the TTAB instituted the opposition proceeding against Sweets Indeed's application for the BOOGERS mark.  (Proceeding No. 91248988.)  The TTAB set discovery to commence on August 29, 2019.  After over 3 months of discovery, Sweets Indeed withdrew its application for the BOOGERS mark.

IV.    Defendants' Deliberate and Intentional Manufacture, Promotion, and Sale of Replica Products

56.    Despite being aware of Plaintiffs' products and marks, on information and belief, Defendants have used, copied, reproduced, or manufactured exact replicas of Plaintiffs' products, including Plaintiffs' brands and trademarks, to distribute, display, market, sell and place in the stream of commerce products that are substantially the same and virtually identical to Plaintiffs' products. Defendants' replica products are certain to mislead, deceive, and cause confusion, and, in fact, already have misled, deceived, and confused.

57.    On information and belief, Defendants knowingly and intentionally caused customers to be misled, deceived, and confused regarding the origin of the replica products.  For example, after Defendant Sweets Indeed acquired the Can You Imagine That's manufacturing facility, Defendant Dannettelle sent a letter to Plaintiffs' customers on behalf of Sweets Indeed.  (**Exhibit F**.)  Defendants' letter states:

"Recently, my company acquired the candy manufacturing facility formerly belonging to 'Can You Imagine That,' also known as 'Nifty

Candy Company.' **This letter is part of an ongoing effort to reach out to former customers of Can You Imagine That and ensure you are aware that we are continuing to make many of the same products as those that you were previously ordering**."

(*Id.* (emphasis added).)

58.     Additionally, Defendants' use of Plaintiffs' marks, brands, and trade dress creates a high likelihood of confusion, at least because Defendants have represented that their replica products are "the same" as Plaintiffs' products; Defendants' replica products are marketed and sold as though they originate from Plaintiffs; and Defendants have altered nothing about Plaintiffs' marks, brands, and trade dress.

59.     By replicating the entire appearance and meaning of Plaintiffs' marks and trade dress, Defendants have profited and continue to profit from customers' association with the goodwill and positive reputation signaled by Plaintiffs' marks, brands, trade dress.

60.     Candy Warehouse is just one example of the actual deception, misinformation, and confusion caused by Defendants' acts.  Candy Warehouse is an established online candy retailer and distributor that, according to its website, carries over 6,000 varieties of candy and has been in business since 1998.  (Candy Warehouse homepage and About Us, *available at* www.candywarehouse.com.)

61.     On information and belief, despite having not sold any of their products to Candy Warehouse in the past few years, several of Plaintiffs' products are still displayed for sale on Candy Warehouse's website as of the filing of this Complaint.  According to Candy Warehouse, these products been sold to Candy Warehouse's customers at least through 2019.

62.     For example, below is a screenshot showing Sandy Candy and Crime Scene Candy products being displayed and offered for sale on the Candy Warehouse website:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



63.    On information and belief, the Sandy Candy and Crime Scene Candy products that are advertised, offered for sale, and sold through Candy Warehouse do not originate from Plaintiffs and, instead, are Defendants' replica, counterfeit products.

64.    Tellingly, on information and belief, when Candy Warehouse was asked about its source for these products, a customer sales representative stated that he/she was unable to definitively determine whether Candy Warehouse's stock originated from Defendant Sweets Indeed or Plaintiffs.

65.    Notably, Candy Warehouse's customer service representative expressed a (mistaken) belief that "Sweet[s] Indeed and Can You Imagine [That] are together" and "either the same company or merged.  When asked what Sweets Indeed products are sold by Candy Warehouse, the representative pointed to a link to Can You Imagine That's webpage: *https://www.candywarehouse.com/can-you-imagine-candy*.

66.    On information and belief, Defendant Sweets Indeed promotes, advertises, markets, distributes, offers for sale, and sells its replica products, which are virtually identical to Plaintiffs' products, to customers across the U.S., including on Amazon, Candy Warehouse, Etsy, Instagram, Facebook, Twitter, Grocery.com, and other online channels.

1    67.    For example, below are images of Sweets Indeed's candy **Blood Clots**

2  being advertised, offered for sale, and sold through Amazon and Sweets Indeed's

3  own website:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18    68.    For comparison, below are images of Plaintiffs' candy **Blood Clots**:

19
20
21
22
23
24
25
26
27
28



1    69.    Similarly, on information and belief, Sweets Indeed advertises, offers
2  for sale, and sells replica candy **Boogers** on its website.   Below are exemplary
3  screenshots:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    70.    On information and belief, Sweets Indeed advertises, displays, and

17 offers for sale a variety of **Boogers** candy products through its virtual storefront on

18 Amazon.  Below are exemplary images:

19
20
21
22
23
24
25
26
27



28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28











71.     For comparison, below are images of Plaintiffs' Zombie Boogers and Unicorn Boogers products:



72.     On information and belief, Defendants also advertise, promote, distribute, offer for sale and sell the replica candy products through Etsy.  For example, below are images of user-submitted reviews of candy Unicorn Boogers

and Zombie Boogers posted on webpages that appear to be managed and controlled by Sweets Indeed, and hosted on Etsy.com:



73.    On information and belief, Defendants also advertise, market, and promote the replica candy products through Instagram.  On information and belief, the images below, excerpted from Instagram, were submitted by customers and

employees of Sweets Indeed and describe replica products, particularly **Zombie Boogers** and **Crime Scene Candy**, being advertised and sold by Sweets Indeed:





74.   On information and belief, Defendants also advertise, market, and promote their replica products on various other websites and internet platforms, including Facebook and Twitter.

75.   For example, the following image shows a Facebook post by the Sweets Indeed account that promotes candy Boogers, including Zombie Boogers,

1   Unicorn Boogers, and Dinosaur Boogers, and encourages the public to visit the

2   Sweets Indeed website to make a purchase:



76.     Another post by the same Sweets Indeed account depicts candy Blood Clots, Zombie Boogers, and Ghost Boogers, and encourages readers to visit Sweets Indeed's Amazon store to buy the products:



77.     Similarly, on information and belief, below is an image of posts (i.e., tweets) from Sweets Indeed's Twitter account.  A tweet from November 11, 2018, describes a forthcoming "Holiday Boogers Collection" product and encourages readers to visit Facebook to learn more and Amazon to make a purchase:



78.    On information and belief, Defendants have received significant revenue from sales of candy products that make use of Plaintiffs' marks, brands, and trade dress.

79.    For example, on information and belief, Sweets Indeed has at least $ 225,000 in sales of just the candy Boogers products sold through Amazon.

80.    To further illustrate, on information and belief, at least 457 units of Crime Scene Candy—that originated from Sweets Indeed but promoted and sold using Plaintiffs' marks and brand names—have been sold through Candy Warehouse from 2018–2019.

81.    Defendants have no license from Plaintiffs to use, reproduce, or display Candyman Kitchens' marks, brands, or trade dress.

## COUNT I

### Trademark Infringement and Counterfeiting Under 15 U.S.C. § 1114(1)

82.    Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as though fully set forth herein.

83.    Based on the acts, conduct, and events described above, Defendants have infringed Plaintiffs' SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ marks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

84.    Defendants' use of Plaintiffs' trademarks in connection with the promotion, distribution, offer for sale, and/or sale of candy and confectionary is likely to cause confusion, or to cause mistake, or to deceive about the identity and origin of the goods.

85.    On information and belief, Defendants' use of Plaintiffs' marks has been intentional, willful and malicious.  Defendants' bad faith is evinced at least by their unlawful use of Plaintiffs' marks that is intended to cause customers to be confused, mistaken, or deceived that Defendants' products are "the same" as Plaintiffs' products or originate from Plaintiffs.  Further, at least with respect to the

BOOGERS mark, Defendants' bad faith is also evinced by their disregard for Plaintiffs' rights and the likelihood of confusion and mistake, despite being notified of their unlawful conduct during the Opposition before the U.S. Trademark Trial and Appeal Board.

86.     Defendants' infringement of the SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ word marks extends beyond products that are covered by Plaintiffs' trade dress rights.  That is, Defendants' use of the marks to confuse consumers and the public extends to Defendants' candy products, and promotion and advertising thereof, that may not be covered by Plaintiffs' trade dress rights.

87.     **In addition to the alleged facts above, the following allegations demonstrate likelihood of confusion:**

a.     Plaintiffs' SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ marks are arbitrary and have acquired secondary meaning.

b.     Plaintiffs have done extensive in-person and online, written, photographic, and video, promotion and advertising featuring each of the marks.  As examples, Plaintiffs have engaged with bloggers to review their products and manufacturing facility; their founders have participated in numerous interviews in order to promote the products associated with the marks; and displayed their products, which bear the marks, through several online channels, including Amazon, their own websites, and Candy Warehouse.

c.     Plaintiffs have also developed a substantial amount of business and goodwill through word of mouth, including the support from the public who know of Mr. Klein's experiences in the candy industry.  Plaintiffs have provided superior goods and services to their customers; and their customers choose and have chosen to do business with Plaintiffs because they intend to

and believe they are supporting goods originating from or affiliated with the Kleins and their businesses. Plaintiffs' marks are associated with and indicators of Plaintiffs' outstanding service, high-quality and innovative products, and strong reputation. As a result, Plaintiffs have developed substantial goodwill and customer support over the years.

d. Defendants have used Plaintiffs' marks at least online, including on social media, as described above. On information and belief, Defendants' online and social media activities use Plaintiffs' marks and deceptively promote and encourage potential customers to purchase Defendants' candy products on Defendants' websites or third-party online sellers, e.g., Amazon, Candy Warehouse, and Etsy.

e. Defendants' use of the each of Plaintiffs' marks is identical to Plaintiffs' mark.

f. Defendants use Plaintiffs' marks for promoting, advertising, and encouraging the sale of candy and confectionary that are substantially identical to Plaintiffs products. In addition, derived additional benefit, including the promotion and sale of Defendants' other products, by improperly using to Plaintiffs' marks to garner the goodwill, publicity, and reputation of Plaintiffs,

g. Defendants' use of Plaintiffs' arbitrary SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ marks to promote candy and confectionary products that Defendants stated were meant to be "the same" as, and which are in fact substantially identical to, Plaintiffs' products evinces Defendants' bad faith. Additionally, Defendants' continued willful infringement also evidences bad faith.

88. Plaintiffs are entitled to recover at least Defendants' profits from its infringing sales, Plaintiffs' actual damages, statutory damages, enhanced damages,

injunctive relief, costs, and reasonable attorneys' fees pursuant at least to 15 U.S.C. §§ 1114(1), 1116, and 1117.

### COUNT II

### Trademark Infringement Under 15 U.S.C. § 1125(a) and Common Law

89.   Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as though fully set forth herein.

90.   Plaintiffs have prior rights in Plaintiffs' registered trademarks and other unregistered marks, SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™.

91.   Defendants' products bearing or otherwise displaying or using Plaintiffs' marks have infringed Plaintiffs' marks by using identical or similar names in Defendants' products.

92.   Defendants' use of their infringing product names and descriptions is likely to cause confusion or mistake, or to deceive the consumer as to the affiliation, association, connection, endorsement, or authorization of Defendants and their products, with Plaintiffs; or as to the origin, sponsorship, or approval by Plaintiffs of Defendants' goods, services, or commercial activities.

93.   Plaintiffs are entitled to recover at least Defendants' profits from its infringing sales, Plaintiffs' actual damages, statutory damages, enhanced damages, injunctive relief, costs, and reasonable attorneys' fees pursuant at least to 15 U.S.C. §§ 1114(1), 1116, and 1117.

### COUNT III

### Trademark Dilution Under 15 U.S.C. § 1125(c)

94.   Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as though fully set forth herein.

95.   Based on the acts, conduct, and events described above, Defendants have diluted and continue to dilute Plaintiffs' famous trademarks—SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and

BOOGERS™—and product designs in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  Defendants' use of Plaintiffs' marks and product designs and colorable imitations thereof is likely to cause, and has caused, dilution of Plaintiffs' famous trademarks by lessening the capacity of Plaintiffs' famous trademarks to identify and distinguish Plaintiffs' products, and by impairing the distinctiveness of Plaintiffs' famous trademarks.

96.   Plaintiffs' trademarks are famous and are entitled to protection under the Lanham Act.  Plaintiffs' trademarks have acquired and inherent distinctiveness through Plaintiffs' extensive and continuous promotion and use of the marks in the United States.  Through that extensive and continuous use, Plaintiffs' trademarks have become famous, well-known indicators of the origin and quality of Plaintiffs' products throughout the United States and are widely recognized as a designation of source of Plaintiffs' products.  Plaintiffs' trademarks have also acquired substantial secondary meaning in the marketplace.  Moreover, Plaintiffs' trademarks had become famous and acquired secondary meaning before Defendants began their unlawful use of Plaintiffs' trademarks in connection with Defendants' products.

97.   On information and belief, Defendants' use of Plaintiffs' marks has been intentional, willful, and malicious.  Defendants' bad faith is evinced at least by their unlawful use of Plaintiffs' marks that is intended to cause customers to be confused, mistaken, or deceived that Defendants' products are "the same" as Plaintiffs' products or originate from Plaintiffs.  Further, at least with respect to the BOOGERS mark, Defendants' bad faith is also evinced by their disregard for Plaintiffs' rights and the likelihood of confusion and mistake, despite being notified of their unlawful conduct during the Opposition before the U.S. Trademark Trial and Appeal Board.

98.   Plaintiffs are entitled to recover at least Defendants' profits from its infringing sales, Plaintiffs' actual damages, statutory damages, enhanced damages,

injunctive relief, costs, and reasonable attorneys' fees pursuant at least to 15 U.S.C. §§ 1116, 1117, and 1125.

## COUNT IV

### False Designation of Origin and Descriptions Under 15 U.S.C. § 1125(a)

99.    Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as though fully set forth herein.

100.   Based on the acts, conduct, and events described above—including, for example, Defendants' use of Plaintiffs' SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ marks and Plaintiffs' Can You Imagine That brand, and colorable imitations thereof—Defendants violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Defendants' unauthorized use of Plaintiffs' trademarks and colorable imitations thereof is likely to cause confusion, mistake, or deception about the affiliation, connection, and association of Defendants with Plaintiffs; and about the origin, sponsorship, and approval of the Defendants' products, at least by creating the false and misleading impression that the products are manufactured by, authorized by, or otherwise associated with Plaintiffs or their founders.

101.   Plaintiffs' marks are entitled to protection under the Lanham Act. Plaintiffs have extensively promoted and used its trademarks in the United States. Through that extensive and continuous use, Plaintiffs' trademarks have become well-known indicators of the origin and quality of Plaintiffs' products.  Plaintiffs' trademarks have also acquired substantial secondary meaning in the marketplace. Moreover, Plaintiffs' trademarks acquired this secondary meaning before Defendants commenced their unlawful use of Plaintiffs' trademarks in connection with Defendants' products.

102.   **In addition to the alleged facts above, the following allegations demonstrate likelihood of confusion:**

a.     Plaintiffs' SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ marks, and Can You Imagine That! Confections brand, are arbitrary and have acquired secondary meaning.

b.     Plaintiffs have done extensive in-person and online, written, photographic, and video, promotion and advertising featuring each of the marks.  As examples, Plaintiffs have engaged with bloggers to review their products and manufacturing facility; their founders have participated in numerous interviews in order to promote Plaintiffs' products, marks, brands, and trade dress; and displayed their products, which bear the marks, through several online channels, including Amazon, their own websites, and Candy Warehouse.

c.     Plaintiffs have also developed a substantial amount of business and goodwill through word of mouth, including the support from the public who know of Mr. Klein's experiences in the candy industry.  Plaintiffs have provided superior goods and services to their customers; and their customers choose and have chosen to do business with Plaintiffs because they intend to and believe they are supporting goods originating from or affiliated with the Kleins and their businesses.  Plaintiffs' marks are associated with and indicators of Plaintiffs' outstanding service, high-quality and innovative products, and strong reputation.  As a result, Plaintiffs have developed substantial goodwill and customer support over the years.

d.     Defendants have used Plaintiffs' marks at least online, including on social media, as described above.  On information and belief, Defendants' online and social media activities use Plaintiffs' marks and deceptively promote and encourage potential customers to purchase Defendants' candy products on Defendants' websites or third-party online sellers, e.g., Amazon, Candy Warehouse, and Etsy.

e.   Defendants' use of the each of Plaintiffs' marks is identical or a colorable imitation to Plaintiffs' mark.

f.   Defendants use Plaintiffs' marks for promoting, advertising, and encouraging the sale of candy and confectionary that are substantially identical to Plaintiffs products.  In addition, derived additional benefit, including the promotion and sale of Defendants' other products, by improperly using to Plaintiffs' marks to garner the goodwill, publicity, and reputation of Plaintiffs,

g.   Defendants' use of Plaintiffs' arbitrary SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ marks to promote candy and confectionary products that Defendants stated were meant to be "the same" as, and which are in fact substantially identical to, Plaintiffs' products evinces Defendants' bad faith. Additionally, Defendants' continued willful infringement also evidences bad faith.

103.   Plaintiffs are entitled to recover at least Defendants' profits from its infringing sales, Plaintiffs' actual damages, statutory damages, enhanced damages, injunctive relief, costs, and reasonable attorneys' fees pursuant at least to 15 U.S.C. §§ 1114(1), 1116, and 1117.

## <u>COUNT V</u>

### <u>Trade Dress Infringement Under 15 U.S.C. § 1125(a)</u>

104.   Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as though fully set forth herein.

105.   Plaintiffs own all right and title to the distinctive trade dress of their Sandy Candy, Crime Scene Candy, candy Blood Clots, and candy Boogers products, including the translucent vials with opaque caps/closures, the size and horizontal position of the product label identifying the product, and the font and colors used in the product labels (as shown in the images above).

106.   Plaintiffs' trade dress of the aforementioned products are a designation of origin that identifies Plaintiffs as the exclusive source of their goods, and distinguishes Plaintiffs' goods from the goods of others, including Defendants, in the marketplace.

107.   **In addition to the alleged facts above, the following allegations demonstrate likelihood of confusion:**

a.   Since prior to 1998, Plaintiffs have expended substantial time and resources developing, advertising, and promoting the product design and packaging for the Sandy Candy, edible "sand" art candy, product, which embodies their trade dress.

b.   Since at least April 30, 2009, Plaintiffs have expended substantial time and resources developing, advertising, and promoting the product design and packaging for Crime Scene Candy product, which embodies their trade dress.

c.   Since at least March 24, 2011, Plaintiffs have expended substantial time and resources developing, advertising, and promoting the product design and packaging for candy Blood Clots product, which embodies their trade dress.

d.   Since at least March 24, 2011, Plaintiffs have expended substantial time and resources developing, advertising, and promoting the product design and packaging for the candy Boogers line of products, which embodies their trade dress.

e.   Plaintiffs have cultivated the unique and distinctive overall appearance of the aforementioned products, such that consumers and jewelers are easily able to identify such products as originating from and associated with Plaintiffs.  Plaintiffs' product designs and packaging are distinctive.

f.      Plaintiffs have done extensive in-person and online, written, photographic, and video, promotion and advertising featuring the product design, packaging, and overall appearance of each of the products.

g.      The design and appearance of Defendants' Sandy Candy, Crime Scene Candy, candy Blood Clots, and variety of candy Boogers products are substantially the same as Plaintiffs' product designs, packaging, and overall appearance at least online, including on social media, as described above. On information and belief, Defendants' online and social media activities use Plaintiffs' marks and deceptively promote and encourage potential customers to purchase Defendants' candy products on Defendants' websites or third-party online sellers, e.g., Amazon, Candy Warehouse, and Etsy.

h.      There is evidence of actual confusion created by Defendants' promotion of candy products substantially identical to Plaintiffs' products; for example, those sold through Candy Warehouse.

i.      Defendants advertise, promote and market their jewelry in the same channels of trade as Plaintiffs' products in the United States, including this District.

j.      Upon information and belief, Defendants deliberately adopted the appearances of their candy sand art products, Crime Scene Candy, candy Blood Clots, and candy Boogers in order to trade upon and benefit from the hard-earned goodwill, publicity, and reputation of Plaintiffs and their founders, and Defendants have deliberately tried to ride Plaintiffs' coattails to capitalize on Plaintiffs' trade dress.

k.      Defendants' bad faith is evidenced at least by the similarity in design, packaging, and appearance of Defendants' candy "sand art" products, Crime Scene Candy, candy Blood Clots, and candy Boogers; Defendants' use of Plaintiffs' marks; and Defendants' continued use of Plaintiffs' intellectual property and resulting likelihood of confusion, despite

having knowledge and being notified of their unlawful conduct. Thus, Defendants' infringement is willful and this action is an exceptional case.

108. Plaintiffs are entitled to recover at least Defendants' profits from its infringing sales, Plaintiffs' actual damages, statutory damages, enhanced damages, injunctive relief, costs, and reasonable attorneys' fees pursuant at least to 15 U.S.C. §§ 1116, 1117, and 1125.

## COUNT VI

### Trade Dress Dilution Under 15 U.S.C. § 1125(c)

109. Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as though fully set forth herein.

110. Based on the acts, conduct, and events described above, Defendants have diluted and continue to dilute Plaintiffs' famous trade dress, as described in the preceding paragraphs, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Defendants' use of Plaintiffs' trade dress and colorable imitations thereof is likely to cause, and has caused, dilution of Plaintiffs' famous trade dress by lessening the capacity of Plaintiffs' trade dress to identify and distinguish Plaintiffs' products and by impairing the distinctiveness of Plaintiffs' famous trade dress.

111. Plaintiffs' trade dress is famous and entitled to protection under the Lanham Act. Plaintiffs' trade dress includes unique, distinctive, and non-functional designs. Plaintiffs' trade dress has acquired distinctiveness through Plaintiffs' extensive and continuous promotion and use of Plaintiffs' trade dress in the United States. Through that extensive and continuous use, Plaintiffs' trade dress has become a famous, well-known indicator of the origin and quality of Plaintiffs' products throughout the United States, and is widely recognized as a designation of the source of Plaintiffs' products. Plaintiffs' trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Plaintiffs' trade dress became famous and acquired secondary meaning before Defendants started

their unlawful use of product designs, packaging, and overall appearance that are substantially similar to Plaintiffs' products.

112.   Defendants' bad faith is evidenced at least by the similarity in design, packaging, and appearance of Defendants' candy "sand art" products, Crime Scene Candy, candy Blood Clots, and candy Boogers; Defendants' use of Plaintiffs' marks; and Defendants' continued use of Plaintiffs' intellectual property and resulting likelihood of confusion, despite having knowledge and being notified of their unlawful conduct.  Thus, Defendants' infringement is willful and this action is an "exceptional case."

113.   Plaintiffs are entitled to recover at least Defendants' profits, Plaintiffs' actual damages, enhanced damages, injunctive relief, costs, and reasonable attorneys' fees under at least 15 U.S.C. §§ 1116, 1117, and 1125.

## COUNT VII

## Common Law Unfair Competition

114.   Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as though fully set forth herein.

115.   On information and belief, Defendants, by careful and considered planning, have promoted the design, appearance, and descriptions of Defendants' replica candy "sand art" products, Crime Scene Candy, candy Blood Clots, and candy Boogers products using Plaintiffs' trademarks to consumers and the public, in order to confuse, mislead, and deceive, and obtain the acceptance of their goods, services, or commercial activities, based on the merit, reputation, and goodwill of Plaintiffs and their high-quality goods and services.

116.   Defendants' actions and conduct constitute oppression and malice in that they have intentionally engaged in activities designed to confuse and deceive the public and to divert to Defendants sales that Plaintiffs would have otherwise enjoyed.

117.   Plaintiffs also allege that Defendants have misappropriated and unlawfully exploited the valuable property rights and goodwill of Plaintiffs and Plaintiffs' products through Defendants' use of Plaintiffs' intellectual property. Because of this misappropriation, Plaintiffs have suffered and will suffer damages and injury to their property and goodwill, including destruction of the business value of Plaintiffs' trade dress and trademarks, and Defendants have been and will continue to be unjustly enriched thereby.

## COUNT VIII

### Deceptive, False, and Misleading Advertising Under Cal. Bus. & Prof. Code §§ 17500 *et seq.*

118.   Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as though fully set forth herein.

119.   Since substantially prior to Defendants' first use of Plaintiffs' SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ marks, and Plaintiffs' product designs, packaging, and appearance, Plaintiff has had valid and protectable rights in its widely recognized and famous trademarks and trade dress in connection with candy and confectionary.

120.   On information and belief, Defendants knew or should have known of Plaintiffs' ownership, rights to, and use of Plaintiffs' marks and trade dress prior to Defendants' use of the same to advertise, promote, market, distribute, sell, or offer for sale their candy and confectionary products.

121.   Further, Defendants' unlicensed and unauthorized use of Plaintiffs' trademarks and trade dress is likely to cause confusion and mislead and deceive consumers and the public to believe there is a relationship between Defendants and Plaintiffs; that Plaintiffs or their founders are affiliated or associated with, or sponsor, Defendants; or that Defendants' products are manufactured by, authorized by, originated from, or otherwise associated with Plaintiffs or their founders.  Such

falsely claimed association and misleading advertising violates California Business & Professions Code §§ 17500 *et seq*.

122.   Defendants' conduct constitutes unlawful business acts or practices in that Defendants' deceptive, false, and misleading advertising and promotion are likely to mislead or deceive the public into purchasing or consuming goods or services they would not otherwise purchase or consume, resulting in Defendants obtaining sales, profits, publicity, and goodwill that Plaintiffs should have received.

123.   On information and belief, Defendants have acted with knowledge and intention to mislead and deceive the public, and cause sales, profits, publicity, and goodwill to be diverted from Plaintiffs and, instead, unjustly enrich Defendants. Such willful and malicious unlawful business practices support an award of exemplary or punitive damages, under California Civil Code § 3294, in an amount sufficient to deter them from, and make an example of, such continued and egregious conduct.

124.   Defendants should be required to restore to Plaintiffs any and all profits and unjust enrichment received as a result of its unlawful business acts or practices.

## COUNT IX

### Unfair Competition Under Cal. Bus. & Prof. Code §§ 17200 *et seq*.

125.   Defendants' conduct constitutes unlawful business acts or practices in that Defendants have engaged in at least (1) trademark infringement and dilution under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114, 1125; (2) false designation of origin and false descriptions under Section 43 of the Lanham Act, 15 U.S.C. § 1125 (3) trade dress infringement and dilution under Section 43 of the Lanham Act, 15 U.S.C. § 1125; and (4) deceptive, false, and misleading advertising under California Business and Professions Code §§ 17500, *et seq*.

126.   Defendants' conduct constitutes unlawful business acts or practices in that Defendants' trademark infringement and dilution; false designation of origin

and false descriptions; trade dress infringement and dilution; and deceptive, false, and misleading advertising and promotion are likely to—and indeed already have—mislead or deceive the public into purchasing or consuming goods or services they would not otherwise purchase or consume, resulting in Defendants obtaining sales, profits, publicity, and goodwill that Plaintiffs should have received.

127.   As a direct and proximate result of Defendants' wrongful and unlawful conduct described in this Complaint, Plaintiffs have been, is now, and will continue to be harmed and damaged by Defendants' aforementioned acts.  Defendants' unfair and unlawful business acts and practices have, and continue to, injure and harm Plaintiffs' name, business reputation, and goodwill, and dilute the distinctive quality of Plaintiffs' trademarks and trade dress.

128.   On information and belief, Defendants have acted with full knowledge and notice of Plaintiffs' rights, and with the intention to infringe on or otherwise violate such rights and, therefore, their aforementioned acts are willful, intentional, oppressive, and malicious.  Such conduct and unlawful business practices supports an award of exemplary or punitive damages, under California Civil Code § 3294, in an amount sufficient to deter them from, and make an example of, such continued and egregious conduct.

129.   Defendants should be required to restore to Plaintiffs any and all profits and unjust enrichment received as a result of its unlawful business acts or practices.

## **JOINT AND SEVERAL LIABILITY**

130.   Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as though fully set forth herein.

131.   At all relevant times, Defendants were jointly engaged in the commission of the aforementioned unlawful and tortious actions.  On information and belief, Defendants Sweets Indeed, Marie E. Dannettelle, and Gregory Nathanson each acted intentionally and their actions caused a single, indivisible

injury to Plaintiff.  Accordingly, Defendants are jointly and severally liable for all of Plaintiffs' damages as pleaded herein.

## JURY DEMAND

132.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request relief as follows:

a)      That judgment be entered in favor of Plaintiffs Candyman Kitchen and Can You Imagine That on their claims of trademark infringement and dilution; false designation of origin; trade dress infringement and dilution; deceptive, false, and misleading advertising; and unfair competition;

b)      That judgment be entered finding that Defendants' unlawful actions and conduct were willful, malicious, oppressive, and intentional;

c)      Compensatory damages for actual loss, statutory damages, and/or unjust enrichment, as permitted by law, caused by Defendants' unlawful acts and conduct;

d)      Enhanced, exemplary, and/or punitive damages for Defendants' willful and intentional violation of Plaintiffs' rights in their trademarks and trade dress, as well as willful, malicious oppressive, and intentional unlawful conduct;

e)      An award of Plaintiffs' reasonable attorneys' fees and costs associated with this action as provided for under 15 U.S.C. § 1117 or other such applicable law;

f)      Injunctive or other equitable relief, including an order to immediately cease and discontinue making, using, promoting, advertising, marketing, displaying, selling, or offering for sale any product or service that violates Plaintiffs' rights;

g)      Entry of an order directing Defendants to surrender to Plaintiffs all property, tangible and intangible, including, but not limited to, all goods,

merchandise, and materials that infringe or otherwise Plaintiffs' intellectual property rights, and all tooling, templates, patterns, or other means and media used by Defendants to copy, manufacture, reproduce, publish, display, distribute, transmit, market, promote, license and sell products covered by Plaintiffs' trade dress;

        h)     Pre-judgment and post-judgment interest; and

        i)     Such other and further relief as the Court may deem just and proper.

DATED: January 27, 2020         Respectfully Submitted,

                              By */s/ Jodie W. Cheng*

                              JWC LEGAL
Jodie W. Cheng (SBN 292330)
jodie@jwc-legal.com
445 South Figueroa Street, 31st Floor
Los Angeles, California 90071
Telephone: (415) 293-8308

*Counsel for Plaintiffs Candyman Kitchens Inc. and Can You Imagine That! Confections Inc.*