Jodie W. Cheng (SBN 292330)
jodie@jwc-legal.com
**JWC LEGAL**
445 South Figueroa Street, 31st Floor
Los Angeles, California 90071
(415) 293-8308

*Counsel for Plaintiffs*
*Candyman Kitchens Inc.;*
*Can You Imagine That! Confections Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDYMAN KITCHENS INC.; CAN YOU IMAGINE THAT! CONFECTIONS INC. <br><br> Plaintiffs, <br><br> v. <br><br> SWEETS INDEED, LLC; MARIE E. DANNETTELLE; GREGORY NATHANSON <br><br> Defendants. | CASE NO. 2:20-cv-00841 <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> **Hearing** <br> Date:  April 13, 2020 <br> Time:  1:30 p.m. <br> Judge:  Honorable Percy Anderson <br> Courtroom:  350 W. 1st St., <br>                 Courtroom 9A, 9th Floor, <br>                 Los Angeles, CA 90012 |

## I.   INTRODUCTION

On February 27, 2020, Plaintiffs Candyman Kitchens Inc. ("Candyman") and Can You Imagine That! Confections Inc. ("CYIT") (collectively with Candyman, "Plaintiffs") filed their First Amended Complaint (Dkt. 21 ("Complaint" or "FAC")) against Defendants Sweets Indeed, LLC, Marie E. Dannettelle, and Gregory Nathanson (collectively, "Defendants").  On March 16, 2020, Defendants moved to dismiss certain claims of Plaintiffs' Complaint—using the same vague arguments in their earlier (now moot) motion to dismiss (Dkt. 16)— while completely ignoring Plaintiffs' amendments and applicable legal standards. (Dkt. 22 ("Motion to Dismiss," "Motion" or "Mot.").)  Defendants have failed to meet their burden to demonstrate that the operative Complaint is deficient, inadequately pled, or otherwise fails to meet pleading standards.  As such, the Motion to Dismiss should be denied.

In particular, Defendants' Motion belies the fact that Defendants understand and are on fair notice of Plaintiffs' allegations and the issues in this case.  *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (*per curiam*) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  For example, Defendants have submitted an evidentiary declaration and interrogatory responses from another proceeding in order to dispute the validity of Plaintiffs' claims here.  (Dkt. 22-1.)  But Defendants submission fails to show the existence of any deficiencies with respect to pleading standards; it is well established that, in deciding a motion to dismiss, courts "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  Likewise, the remainder of Defendants' arguments fail as they are similarly predicated on erroneous or mischaracterized legal standards and allegations. As described in detail below, Defendants have failed to meet their burden to

demonstrate that any of Plaintiffs claims should be dismissed.  *See, e.g., Mackovski v. City of Garden Grove*, No. SACV-11-01538-CJC(ANx), 2012 WL 12951739, at *1 (C.D. Cal. Jan. 18, 2012) ("It is the burden of the party bringing a motion to dismiss for failure to state a claim to demonstrate that the requirements of Rule8(a)(2) have not been met.").

## II.   DEFENDANTS HAVE FAILED TO SHOW IMPLAUSIBILITY OF PLAINTIFFS' DILUTION CLAIMS

Defendants' Motion also seeks to dismiss Plaintiffs trademark and trade dress dilution claims (FAC, Counts III and VI) solely on the basis that Plaintiffs' trademarks are not sufficiently famous to support a dilution claim.  (Mot. at 5–6.)  Defendants do not argue that Plaintiffs failed to sufficiently plead the famousness of their marks and dress.  Instead, Defendants seek to introduce evidence—specifically interrogatory responses from a proceeding before the Trademark Trial and Appeal Board concerning a trademark application by Defendant Sweets Indeed—to dispute that Plaintiffs' marks are famous.  (*Id.*; Dkt. 22-1.)  Defendants' argument and evidence must be flatly rejected, as they do not apply the appropriate legal standard for a motion under Rule 12(b)(6); and instead, it is an attempt to transform their motion to dismiss into an improperly premature motion for summary judgment.  Moreover, the interrogatory responses cited by Defendants do not contain information that contradicts the famousness of Plaintiffs' marks and, in any event, are grossly mischaracterized by Defendants.

***First***, it is well established "the question presented by a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff has alleged sufficient factual grounds to support a plausible claim to relief, thereby entitling the plaintiff to offer evidence in support of its claim."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).  As such, Plaintiffs are not required to prove their claims at the pleading stage, and the existence of alleged facts or evidence that may be contrary to Plaintiffs claims does not in any

way indicate that Plaintiffs' claims are insufficiently plead. *See id*.; *Erickson*, 551 U.S. 89. The sufficiency of Plaintiffs' pleading and the merits of Defendants' motion to dismiss should "consider only [the] allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz*, 476 F.3d at 763.

***Second***, Defendants' evidence does not support dismissal of Plaintiffs' dilution claim. Defendants cite Plaintiffs' interrogatory responses from an Opposition proceeding before the Trademark Trial and Appeal Board regarding Defendant Sweets Indeed's attempt to register the BOOGERS mark for which Plaintiff claims priority. (Mot. at 6.) The particular interrogatories sought information regarding the revenue, advertising expenditures, and sales of Candyman's products. (*See* Dkt. 22-1.) While these factors may be relevant to a famousness inquiry, the actual substance of the interrogatory responses do not contradict the famousness of Plaintiffs' asserted marks—at least because the interrogatories pertain only to one of the marks at issue, the BOOGERS mark, and seek information only from Plaintiff Candyman.

Specifically, Defendants have mischaracterized the interrogatory responses in an attempt to mislead the Court into believing that Plaintiffs have had no revenue, no advertising expenditures, and no sales; and, thus, no famous marks. But the actual responses show that Defendants' own evidence does not support their argument. For instance, Defendants' Motion argues that "Plaintiff could not even recall the identify of a single purchaser, retailer or distributor for its goods." (Mot. at 6.) But in fact, Plaintiff Candyman's interrogatory response describes that the information is or was within the possession, custody, or control of Sweets Indeed. (Dkt. 22-1 at 8.) In fact, contrary to Defendants' assertion, Candyman's response concludes: "I know I've sold to retailers and consumers as well as distributors." (*Id*.) Similarly, although Defendants claimed that Plaintiff Candyman "could not specifically identify having any revenue whatsoever" and "could not specifically identify even making a single advertising expenditure with respect to one of its trademarks," the interrogatory

1  responses actually state that the "Invoices [showing revenue and advertising
2  expenditures] are in the possession of Sweets Indeed." (*Compare* Mot. at 6 *with* Dkt.
3  22-1 at 11–12.)

4  ### III.   PLAINTIFFS SUFFICIENTLY PLED FACTUAL ALLEGATIONS
5  ### AGAINST DEFENDANTS DANNETTELLE AND NATHANSON

6       Defendants' contention that the Complaint "fails to give individual defendants
7  Nathanson and Dannettelle fair notice of the facts supporting any claims alleged
8  against them" must fail because, simply, it disregards the content of the Complaint,
9  particularly its recent amendments. (*Cf.* Mot. at 6–7.)

10      Regarding Defendant Marie Dannettelle, Plaintiffs have set forth in specific
11  detail, including by attaching writings from Ms. Dannettelle, the factual allegations
12  regarding her misconduct. (*E.g.*, FAC ¶¶ 50–51, 60, 62.) For example, in the
13  Complaint, Plaintiffs described and attached a letter from Ms. Dannettelle to Plaintiff
14  CYIT's former customers, stating that she and Sweets Indeed "are continuing to
15  make . . . the same products as those that [CYIT's customers] were previously
16  ordering." (FAC ¶ 62; Dkt. 21-6.) To further illustrate, Plaintiffs have also described
17  that Ms. Dannettelle made representations on behalf of herself as well as Sweets
18  Indeed while negotiating the purchase of the manufacturing facility from CYIT,
19  including securing the purchase through a Promissory Note executed by Ms.
20  Dannettelle. (FAC ¶¶ 50–51.) Not only have Plaintiffs described and given examples
21  of Ms. Dannettelle's participation in the instant facts, Ms. Dannettelle is undoubtedly
22  aware of her conduct and transactions with Plaintiffs.

23      Similarly, as recently appointed Chief Executive Officer and long-time
24  contributor to Sweets Indeed, Defendant Gregory Nathanson is aware of his
25  individual actions involving the infringement and use of Plaintiffs' trademarks, dress,
26  and intellectual property. (*See* FAC ¶ 18.) As described in the Complaint, Mr.
27  Nathanson participated in and directed the infringing and unlawful conduct regarding

28

1  the promotion and sale of replica products, whether as part of Sweets Indeed or
2  pretending to be associated with Plaintiffs.  (*E.g.*, FAC ¶¶ 60, 65–70.)

3      At bottom, Plaintiffs have sufficiently alleged a series of actions involving
4  Defendant Sweets Indeed, as well as the two individuals at the heart of its operation
5  and under whose direction all misconduct is claimed to have occurred.  As courts in
6  this District have found in similar circumstances, Defendants Dannettelle and
7  Nathanson's contention that they are unable to understand and properly respond to
8  the allegations against them is unpersuasive.  *See Almont Ambulatory Surgery Ctr.,*
9  *LLC v. UnitedHealth Grp., Inc.*, No. CV-14-03053 MWF(VBKx), 2015 WL
10  12777092, at *6 (C.D. Cal. Oct. 23, 2015).[1]

## IV.    PLAINTIFFS HAVE PROPERLY STATED A CALIFORNIA FALSE
ADVERTISING CLAIM

13      Contrary to Defendants' arguments, Plaintiffs have set forth more than
14  adequate details regarding Defendants' false advertising under California Business &
15  Professions Code §§ 17500, *et seq.*; and, thus, Plaintiffs' claim (FAC, Count VIII)
16  must survive the Motion to Dismiss.  (*Cf.* Mot. at 7.)

17      California's false advertising law "makes it unlawful for a business to
18  disseminate any statement 'which is untrue or misleading, and which is known, or
19  which by the exercise of reasonable care would be known, to be untrue or
20  misleading.'"  *Tagtrends, Inc. v. Nordstrom, Inc.*, No. SACV 13-00563 JVS(JPRx),
21  2013 WL 12126741, at *6 (C.D. Cal. Aug. 15, 2013).  The Complaint provides several
22  examples of other false and misleading statements made by Defendants—including
23  the false statements and "how those statements were made, e.g.[,] what media was
24  used."  (*Cf.* Mot. at 7.)  For example, the Complaint contains numerous screenshots
25  of webpages, which include annotations highlighting misstatements, showing

---

27      [1]  Should the Court find that the factual allegations against Defendant
Dannettelle and Nathanson do not put them on fair notice of their involvement, any
28  such deficiencies can be and should be remedied by granting Plaintiffs leave to
amend the Complaint.  *Id.* at *4.

Defendants false advertising.  (*E.g.*, FAC ¶¶ 65–70, 72, 74–75, 77–78, 80–82.)
Moreover, as described above and in the Complaint, Defendants distributed letters
misleadingly stating that they were making "the same products" as Plaintiff CYIT and
also attached the letter for further clarity.  (FAC ¶ 62; Dkt. 21-6.)  Consistent with
holdings from other courts in this District, these factual allegations and exemplary
webpages showing Defendants' false statements are sufficient to survive the Motion
to Dismiss.  *See, e.g.*, *Tagtrends*, 2013 WL 12126741, at *6 ("The Complaint alleges
that Defendant disseminated an untrue statement on its website, which it would have
been aware of if it had exercised reasonable care . . . .  Therefore, Plaintiff sufficiently
states an [false advertising law] claim."); *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F.
Supp. 3d 755, 767–68 (C.D. Cal. 2015).

## V.   DEFENDANTS HAVE FAILED TO DEMONSTRATE PLAINTIFF CYIT LACKS STANDING

In its introduction, Defendants' Motion briefly mentions that Plaintiff CYIT
should be stricken from the Complaint altogether based on Defendants' vague
allegation that CYIT lacks standing.  As an initial matter, *assuming arguendo* that
Defendants intend to raise this argument[2], Defendants have clearly not met their
burden to prove that CYIT lacks standing as to each of the claims it pled.  *See, e.g.,*
*Mackovski*, 2012 WL 12951739, at *1 ("It is the burden of the party bringing a motion
to dismiss for failure to state a claim to demonstrate that the requirements of
Rule 8(a)(2) have not been met."); *see also Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160,
1165 (C.D. Cal. 2002) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406,
1409 (3d Cir. 1991)).  That is, other than their cursory conclusion, Defendants failed
to make any showing or specific argument as to how, i.e., in what ways, CYIT
allegedly lacks standing.

---

[2]  Other than a few sentences in Defendants' introduction, there is no further
argument, articulation, or even mention regarding CYIT's standing in Defendants'
Motion.

1    Specifically, Defendants concede that CYIT's parent company "Candyman is

2    the record owner of the pleaded registrations or the applicant for the pleaded

3    trademark applications" at present.  (Mot. at 3.)  And on that basis alone, Defendants

4    erroneously conclude that CYIT—which is Candyman's predecessor and wholly

5    owned subsidiary—has no standing for "any of the causes of action," including claims

6    for unfair competition and false advertising.  (*Id*.)  But Defendants' unfounded

7    conclusion ignores the substance of the Complaint, which clearly sets forth bases for

8    CYIT's standing, such as the timing and relationship between CYIT and its parent

9    Candyman, vis-à-vis Defendants' improper conduct.

10   For example, with respect to Plaintiffs' claims for trademark infringement

11   (Counts I and II), the Complaint describes that CYIT engaged in continuous use, and

12   was the owner, of the asserted marks within the period of Defendants' alleged

13   wrongdoing.  In other words, CYIT and Candyman were registered owners of the

14   asserted trademarks at separate times during Defendants' continuing infringement.

15   Throughout the negotiations and even after Defendants' purchase of the

16   manufacturing plant (which gave rise to the instant action), CYIT was the owner of

17   all marks at issue.  (*See* FAC ¶¶ 50–51.)  In fact, CYIT's marks and intellectual

18   property were only transferred to its parent corporation, Candyman, after the asset

19   purchase and after Defendants began their infringing conduct.  (*Id.* at ¶¶ 49–53.)  Even

20   after the transfer of intellectual property from CYIT to Candyman, Plaintiff CYIT

21   continued to suffer injury as a result of Defendants' continued infringing and

22   misleading commercial activities.  That is, after CYIT's intellectual property was

23   transferred to its parent corporation, Candyman, CYIT remained an authorized user

24   of the asserted trademarks and dress; and CYIT suffered harm and injury caused by

25   Defendants unauthorized and illegal use of the trademarks, and dress.  (*E.g.*, FAC

26   ¶¶ 49–53, 62–70, 87–99.)

27   Moreover, Candyman's ownership of the certain registrations and applications

28   have no bearing on CYIT's standing to bring the remaining claims for trademark

dilution (Count III); trade dress infringement and dilution (Counts V and VI); false description (Count IV); unfair competition (Counts VII and IX); and false advertising (Count VIII).  *See, e.g.*, *Dahon North Am., Inc. v. Hon*, No. 2:11-cv-5835, 2012 WL 1413681, at *9 (C.D. Cal. Apr. 24, 2012) ("But, unlike a claim for trademark infringement, ownership is not required to bring a claim for trademark dilution.").

As set forth in the Complaint, Defendants made unlawful use of CYIT's brand, goodwill, and reputation; and, as a result of that improper conduct, CYIT was injured. For example, the Complaint describes that Defendant Dannettelle wrote to CYIT's prior customers stating that, after purchasing CYIT's manufacturing facility, Defendants Sweets Indeed and Dannettelle "are continuing to make many of the same products" as CYIT.  (FAC ¶ 62; Dkt. 21-6 (attaching letter).)  As yet another example, the Complaint also alleges in detail that Defendants have been selling their products to web-based retailer Candy Warehouse, using CYIT's company and brand name. (FAC ¶¶ 67–70.)  Courts in this District have found such allegations to be sufficient to defeat motions to dismiss.  *See, e.g., Spy Optic*, 163 F. Supp. 3d at 767 ("Here, Plaintiff alleges that Defendant's misrepresentations on its websites caused injuries to Plaintiff's commercial interest in sales or business reputation because counterfeit sales would reduce authentic Spy sales and consumers would erroneously associate the reduced-quality counterfeit items with Plaintiff's products.") (discussing sufficiency of claims under California and Federal false advertising statutes).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint be denied.  At a minimum, should the Court grant the Motion, Plaintiffs request that the Court grant them leave to amend the Complaint.  *See* FED. R. CIV. P. 15 (leave to amend should be "freely give[n] . . . when justice so requires."); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003); *Mackovski*, 2012 WL 12951739, at *1 ("In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to

1   amend if the complaint can possibly be cured by additional factual allegations.")
2   (citing *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir.1995)).

3

4   DATED: March 23, 2020                    Respectfully Submitted,

5                                            By */s/ Jodie W. Cheng*

6                                            JWC LEGAL
                                             Jodie W. Cheng (SBN 292330)
7                                            jodie@jwc-legal.com
                                             445 South Figueroa Street, 31st Floor
8                                            Los Angeles, California 90071
                                             Telephone: (415) 293-8308
9                                            *Counsel for Plaintiffs Candyman Kitchens*
10                                           *Inc. and Can You Imagine That!*
                                             *Confections Inc.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28