Jodie W. Cheng (SBN 292330)
jodie@jwc-legal.com
**JWC LEGAL**
445 South Figueroa Street, 31st Floor
Los Angeles, California 90071
(415) 293-8308

*Counsel for Plaintiff*
*Candyman Kitchens Inc.*

**FILED**
CLERK, U.S. DISTRICT COURT

6/01/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: ____lom____ DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CANDYMAN KITCHENS INC.

      Plaintiff,

    v.

SWEETS INDEED, LLC; MARIE E. DANNETTELLE

Defendants.

CASE NO. 2:20-cv-841-PA-AGR

**PLAINTIFF'S THIRD AMENDED COMPLAINT FOR**

**TRADEMARK INFRINGEMENT (15 U.S.C. §§ 1114(1), 1125(a), COMMON LAW);**

**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a));**

**TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125(a));**

**COMMON LAW UNFAIR COMPETITION;**

**FALSE ADVERTISING (CAL. BUS. & PROF. CODE § 17500 et seq.);**

**UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200 et seq.)**

**DEMAND FOR JURY TRIAL**

Pursuant to the Court's jurisdiction conferred at least by 15 U.S.C § 1121, 28 U.S.C. §§ 1331, 1338(a) & (b) and 1367, and as further described below, Plaintiff Candyman Kitchens Inc. ("Candyman" or "Plaintiff") submits this Complaint against Sweets Indeed, LLC ("Sweets Indeed") and Marie E. Dannettelle (collectively, "Defendants"); and alleges as follows:

**INTRODUCTION**

1.      This action arises from Defendants' deliberate scheme to manufacture and promote replica products—which Defendants themselves described as "the same" as Plaintiff Candyman's products, including bearing Candyman's marks, packaging, and design—for sale to customers of Candyman and its predecessor, Can You Imagine That! Confections, Inc.

2.      Candyman and its creative, novelty candy products are the brainchild of David Klein, who invented the world-famous Jelly Belly® in 1976, and his daughter, Roxanne (Roxy) Klein.  As a well-known figure in the candy industry and after inventing Jelly Belly®, Mr. Klein "would go on to appear on several talk shows and even pose for People Magazine—and subsequently became renowned as the 'Candyman'," as well as the subject of a 2010 feature-length documentary film.

3.      Candyman's mission was to provide novelty candy and confectionary that are fun, memorable, distinctive, and unusual.  In Candyman's view, novelty candy should not only taste good but also inspire playfulness, whimsy, and sometimes even shock.  Candyman succeeded in its mission with its candy products designed to resemble fantastical or shocking objects, such as beautiful, multi-colored edible candy "sand art" (Sandy Candy), candy Blood Clots and Crime Scene Candy packaged in plastic vials to resemble lab specimens, and candy Boogers from zombies, unicorns, dragons, etc.  These lighthearted and attention-

grabbing confections attracted the attention and curiosity of consumers, and were popular items, particularly during Halloween and for parties.

4.     Candyman's products gained widespread attention, in part because they are associated with Mr. Klein—who has been described by others as a "visionary when it comes to new tastes"; "destined to be in the candy business"; "kind, whimsical, and generous"; "unique in every facet"; and "a good person" who "breathe[s] life into" candy products—and his family, and their unwavering dedication to innovative candy creations.  Candyman's products are sold across the country and around the world, directly to consumers (often from orders placed through Candyman's websites), as well as through retailers like Amazon and Candy Warehouse.

5.     Up until early 2017, the Candyman products were designed, manufactured, and sold through Mr. Klein's related company, Can You Imagine That! Confections Inc.  Then, in May 2017, Can You Imagine That! Confections transferred all its intellectual property rights, including trademarks and product designs, to Candyman; Candyman effectively became the successor in interest to Can You Imagine That! Confections as Mr. Klein to streamline his business operations.  Thereafter, the Candyman products were manufactured and sold by Candyman under the Can You Imagine That! Confections brand.

6.     Specifically, in early 2017, Can You Imagine That! Confections relocated its manufacturing facility and business operations from Southern California to Florida, where Candyman is based.  Rather than transporting all the manufacturing machinery and equipment across the country, Can You Imagine That! Confections sold its manufacturing facility in Covina, CA.  Mr. Klein planned to continue operating his businesses in Florida where Candyman would sell the

novelty candy under the Can You Imagine That! Confections brand, as had been done in California for many years.

7.     Can You Imagine That! Confections's Covina, CA manufacturing facility was sold to another Southern California-based candy company, Defendant Sweets Indeed.  At the time of the sale, Sweets Indeed primarily focused on providing candy sprinkles and confetti, most often used as dessert toppings and cake decorations.

8.     The terms of the sale were memorialized in the parties' Asset Purchase Agreement, which expressly excluded all trademarks, URL domains, goodwill, and other non-fixed assets from the sale.  In fact, on several occasions, Defendant Dannettelle, founder of Sweets Indeed, wrote to Mr. Klein to confirm that Candyman's trademarks and business remained property of Can You Imagine That! Confections.  These trademarks, as well as all other intellectual property of Can You Imagine That! Confections, were transferred to Candyman in May 2017.

9.     Although Defendants wrote that they were not interested in Candyman's trademarks, brands, or business; after the sale, Sweets Indeed proceeded to rip-off Candyman's products and mislead Candyman's customers into believing that Candyman and Sweets Indeed are the same company or somehow related entities.

10.    Defendants made their wrongful intentions abundantly clear in a letter to Candyman's customers sent immediately after the purchase of the Covina, CA facility.  Tellingly, Dannettelle wrote: "This letter is part of an ongoing effort to reach out to former customers of Can You Imagine That! Confections and ensure you are aware that **we are continuing to make many of the same products** as those that you were previously ordering."  The letter encouraged the customers to

1  purchase from Sweets Indeed by offering a discount "[i]n order to help the
2  transition."

3     11.    Thereafter, Defendants began selling novelty candies—specifically,
4  the candy Boogers, candy Blood Clots, Crime Scene Candy, and Sandy Candy—
5  that were virtually identical to Candyman's products.  Sweets Indeed's copycat
6  products even bear Candyman's trademarks and trade dress, and some are even
7  advertised under the Can You Imagine That! Confections name.

8     12.    Defendants intentionally caused such pervasive confusion that
9  industry professionals, candy retailers, and customers were unable to discern the
10 origin of the candy products.  For example, in late 2019, a customer service
11 representative from Candy Warehouse, a large online bulk candy seller, stated a
12 mistaken belief that "Sweet[s] Indeed and Can You Imagine [That] **are**
13 **together** . . . **either the same company or merged.**"  When asked what Sweets
14 Indeed products are carried by Candy Warehouse, the representative provided a
15 link to a webpage displaying all products from Can You Imagine That!
16 Confections.

17    13.    As a result of Sweets Indeed's copycat products, Candyman has seen
18 a drastic reduction in sales of its legitimate products, at least because consumers
19 and retailers are unknowingly ordering rip-off products from Sweets Indeed.  Some

20
21
22
23
24
25
26
27
28

1  major resellers, including Amazon, have even suspended Candyman's ability to sell
2  while Sweets Indeed continues to advertise, promote, and sell its copied products.

3      14.    Candyman submits this Complaint seeking monetary damages,
4  injunctive relief, and other remedies for the Defendants' intentional wrongful
5  conduct and violations.

6                              **PARTIES**

7      15.    Candyman Kitchens Inc. is a corporation organized under the laws of
8  the State of Florida, with its principal place of business at 8749 NE Jacksonville
9  Rd., Anthony, FL 32617.

10     16.    On information and belief, Sweets Indeed, LLC is a limited liability
11 corporation organized under the laws of the State of Delaware, with its principal
12 place of business at 1032 E. Edna Place, Covina, CA 91724.

13     17.    On information and belief, Marie E. Dannettelle is an individual
14 residing in the State of California who may be contacted at 611 N. Vista Bonita
15 Ave, Glendora, CA 91741.  Ms. Dannettelle is the founder of Sweets Indeed.

16                    **JURISDICTION AND VENUE**

17     18.    This is an action for trademark and trade dress infringement, false
18 designation of origin, false advertising and unfair competition.  This action arises
19 under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. ("the Lanham Act");
20 California Business & Professions Code § 17500 *et seq*.; California Unfair
21 Competition Law Cal. Bus. & Prof. Code §§ 17200 *et seq*.; and common law.

22     19.    This Court has subject matter jurisdiction over this action pursuant to
23 at least 15 U.S.C § 1121 (action arising under the Lanham Act) and 28 U.S.C.
24 §§ 1331 (federal question), 1338(a) & (b) (action relating to trademarks and unfair
25 competition), and 1367 (supplemental jurisdiction over state law claims).

26     20.    This Court has specific and general personal jurisdiction over
27 Defendants pursuant to due process and the California Long Arm Statute because
28 Defendant Sweets Indeed has an regularly established place of business in this

1   District from which it conducts business; Defendant Dannettelle resides within this
2   District; and Defendants have committed and continue to commit acts of
3   infringement and unfair competition in violation of federal and state laws, and
4   knowingly place infringing products into the stream of commerce, including within
5   the State of California and this District.  These acts by Defendants cause injury to
6   Candyman within this District.

7       21.   Further, upon information and belief, Defendants also derive
8   substantial revenue from the sale of infringing products within this District and in
9   interstate commerce; and Defendants anticipate and expect their acts to have
10  consequences within this District.

11      22.   Venue is proper in this District under 28 U.S.C. §§ 1391, 1367(a), and
12  1400(a).  A substantial part of the events giving rise to the claims occurred in this
13  District; Defendants regularly conduct business within this District, including
14  having a regularly established place of business within this District, or reside within
15  this District; and Defendants have committed and continue to commit acts of
16  infringement and unfair competition within this District.  Defendants' wrongful
17  acts giving rise to this lawsuit, and the resulting harm to Candyman, have occurred
18  and are occurring in the State of California and this District.

19  **FACTUAL ALLEGATIONS APPLICABLE TO PLAINTIFF'S CLAIMS**

20  I.   Plaintiff Candyman Kitchens and Its Products

21      23.   Can You Imagine That! Confections Inc. was founded in 1995 by
22  David Klein, who has been a widely known figure in the candy industry since at
23  least 1976 when he invented the internationally known Jelly Belly® jelly bean.  Mr.
24  Klein "would go on to appear on several talk shows and even pose for People
25  Magazine—and subsequently became renowned as the 'Candyman'," as well as the
26  subject of a feature-length documentary film.  (THE CANDYMAN'S COMEBACK, Jan.
27  16, 2019, *available at* https://www.eriereader.com/article/the-candymans-
28  comeback; *see also* 10 QUESTIONS FOR CANDYMAN DAVID KLEIN, May 30, 2008,

1  *available at* http://candyaddict.com/blog/2008/05/30/10-questions-for-candyman-
2  david-klein/.)

3      24.     Mr. Klein's activities and involvement in the candy industry,
4  including his companies Can You Imagine That! Confections and Plaintiff
5  Candyman, frequently garner public support and praise.  (*E.g.*, GLENDORA MAN
6  WHO INVENTED JELLY BELLY THINKS HE'S FOUND THE NEXT BIG THING, Jan. 27,
7  2016, *available at* https://www.sgvtribune.com/2016/01/27/glendora-man-who-
8  invented-jelly-belly-thinks-hes-found-the-next-big-thing/.)

9      25.     After selling his rights in Jelly Belly®—a transaction for which Mr.
10  Klein and many others view was a "raw deal" and the subject of many articles and
11  a documentary film—Mr. Klein devoted substantial efforts, time, and investment
12  into new candy inventions and ventures, including Can You Imagine That!
13  Confections and Plaintiff Candyman.  (*E.g.*, BEAN COUNTER: THE REVIVAL OF
14  AMERICA'S  JELLY  BEAN  KING, Mar.  28,  2016,  *available  at*
15  https://www.vice.com/en_us/article/53q443/bean-counter-the-revival-of-
16  americas-jelly-bean-king; THE CANDYMAN'S COMEBACK, Jan. 16, 2019, *available*
17  *at* https://www.eriereader.com/article/the-candymans-comeback.)

18      26.     Plaintiff Candyman creates, manufactures, markets, and sells novelty
19  candy.  Candyman's products, which are now marketed and sold by Candyman
20  under the Can You Imagine That! Confections brand, include **Sandy Candy**
21  (multicolored candy "sand" to create edible candy art); candy **Blood Clots** and
22  **Crime Scene Candy** (candy that is designed and packaged to resemble lab
23  specimens); and candy **Boogers** (loose candy pieces), such as Zombie Boogers,
24  Unicorn Boogers, Ghost Boogers, and Dragon Boogers.

25      27.     Consumers associate Candyman's novelty products with fun, whimsy,
26  and sometimes even shock that attracts consumers' attention and curiosity.  These
27  products are particularly popular during holidays like Halloween, as well as for
28  children's and themed parties.

28.     Candyman's products have gained widespread attention, in part because they are associated with Mr. Klein—who has been described by others as a "visionary when it comes to new tastes"; "destined to be in the candy business"; "kind, whimsical, and generous"; "unique in every facet"; and "a good person" who "breathe[s] life into" products—and his family.  (*E.g.*, GLENDORA MAN WHO INVENTED JELLY BELLY THINKS HE'S FOUND THE NEXT BIG THING, Jan. 27, 2016, *available at* https://www.sgvtribune.com/2016/01/27/glendora-man-who-invented-jelly-belly-thinks-hes-found-the-next-big-thing/; MEET THE CANDYMAN: INVENTOR OF JELLY BELLY SETS UP SHOP IN CLEARWATER, Dec. 8, 2016, *available at* https://www.tampabay.com/things-to-do/consumer/meet-the-candyman-inventor-of-jelly-belly-sets-up-shop-in-clearwater/2305431/; THE CANDYMAN'S COMEBACK, Jan. 16, 2019, *available at* https://www.eriereader.com/article/the-candymans-comeback.)

29.     For example, while she was still in high school, Roxy Klein created Sandy Candy, which are multicolored, flavored dextrose powders used to create edible "sand art."  Can You Imagine That! Confections then transformed Ms. Klein's idea into a marketable product that was, and still is, distributed and sold around the world. (*E.g.*, BEAN COUNTER: THE REVIVAL OF AMERICA'S JELLY BEAN KING, Mar. 28, 2016, *available at* https://www.vice.com/en_us/article/53q443/bean-counter-the-revival-of-americas-jelly-bean-king.)

30.     Can You Imagine That! Confections and the Sandy Candy products became large successes in the novelty candy industry, which associated Sandy Candy with the Kleins.  (WOMEN TALK:  10 QUESTIONS WITH CANDY CREATOR ROXY KLEIN, Oct. 31, 2013 ("Roxy, 35, is known as Candy Creator at Can You Imagine That! Confections! Inc., the $1 million plus candy manufacturing company she co-owns with her dad, David Klein, the man behind Jelly Belly jelly beans . . . . [S]ince the age of three, Roxy has been coming up with new and imaginative candy

product ideas.  Since then, she has become known for her innovative and original novelty creations that now fill candy store shelves around the country."), *available at* https://womenyoushouldknow.net/women-talk-10-questions-with-candy-woman-roxy-klein/; 10 QUESTIONS FOR CANDYMAN DAVID KLEIN, May 30, 2008 ("From the age of 3, Roxy was always trying to come up with a new candy product . . . .  When Roxy came up with the idea for Sandy Candy I was very excited and I knew that it would be a big hit.  I did what I could to help her but 99 percent of the credit goes to Roxy.  She is not only very very smart, but I have never seen anyone who works as hard as she does."), *available at* http://candyaddict.com/blog/2008/05/30/10-questions-for-candyman-david-klein/.)

31.  Below are exemplary excerpts from the webpage for Candyman's Sandy Candy Fundraiser Kit on Amazon:





Sandy Candy Fundraiser Kit - 10 Flavor Sandy Candy Kit w/ 250 5" Tubes - Sand Candy Art For School Fundraisers, Kids Birthday Party Activities, Games, & Party Favors
by Sandy Candy
★★★★☆  3 ratings

1

2

3

4

5

6

7

8

9

**Product description**

**Sandy Candy: We Bring Candy, You Add The FUN!**

Are you looking for a way to raise money for a cause while keeping the atmosphere fun and light?

It's safe to say: you've found your solution.

What if we told you that you can now organize an unforgettable party armed with one, simple kit?

**Introducing The Sandy Candy Kit**

Sandy Candy was invented by Roxy Klein, who drew inspiration from her father, David Klein, the inventor of the Jelly Belly.

Quickly gaining fame via word of mouth, Sandy Candy is a candy version of sand art.

**Go Far With Sandy Candy!**

You can use our kit to create custom candy creations, following the color scheme of your teen's high school colors or your young adult's college colors. You can use the tubes to fundraise for the charity of your choice, raise money for a good cause at the office, or get a little boost from the congregation.

**10 Mouthwatering Flavors**

Each kit contains 10 of the following flavors: Sour Lemon, Sour Bubble Gum, Sour Blue Raspberry, Sour Cherry, Sour Apple, Sweet Banana, Sweet Orange, Sweet Watermelon, + 2 mouth watering surprise flavors!

And of course, 250 5" tubes so everyone can join in on the fantastic DIY candy making experience!

**Get Your Own Sandy Candy Fundraiser Kit & Raise Money the Fun Way!**

**Click Add To Cart While Supplies Last!**

10

11

12

    32.    Similarly, Candyman's candy **Boogers** products have also attracted the attention and support of candy enthusiasts, who associate candy Boogers with Candyman and Mr. Klein.

13

14

15

16

17

18

    33.    For example, one blogger praised Candyman's Zombie Boogers product for "hav[ing] great names, and look like what they are called but are sweet and yummy" and originating "[f]rom the Candyman, David Klein, inventor of the Jelly Belly Jelly Bean." The positive commentary was accompanied by images of Mr. Klein and Candyman's Zombie Boogers and other novelty candy:

19

20

21

22

23

24

25

 

26

27

28

1  (KENT FAMILY MAGIC CIRCUS DAILY BLOG, Jan. 31, 2012, *available at*
2  http://victorkent.blogspot.com/2012/01/im-posting-these-tonight-without-
3  story.html.)

4      34.    Candyman's products have been marketed and sold across the country
5  and around the world, directly to consumers (often from orders placed through
6  Candyman's websites), as well as through authorized retailers like Amazon and
7  Candy Warehouse.

8      35.    Candyman's distinctive candy products—Sandy Candy, Crime Scene
9  Candy, candy Blood Clots, and candy Boogers products—(1) have been sold and
10  are sold in distinctive and novel packaging that have become indicative of
11  Candyman's fantastical candy creations; (2) bear trademarked names and
12  descriptions; and (3) have been sold and are sold under the Can You Imagine That!
13  Confections, Nifty Candy Company, or Candyman Kitchens names.  Candyman's
14  products have exclusively and continuously used the distinctive design, packaging,
15  marks, and brands since their first release.

16      36.    Below are images of Candyman's **Sandy Candy** products:

   

1
2
3
4
5
6
7
8
9

37.      Below is an image of Candyman's **Crime Scene Candy** product:

10
11
12

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

38.     Below are images of Candyman's candy **Blood Clots** products:

 

39.     Below are images of Candyman's candy **Boogers** products, namely **Zombie Boogers**, **Unicorn Boogers**, **Ghost Boogers**, and **Pig Boogers**:






II.   Candyman's Marks & Intellectual Property

40.   Candyman has rights in registered and common law trademarks undergoing application/examination for registration, which have been exclusively and continuously in use by Can You Imagine That! Confections or its successor in interest, Plaintiff Candyman, since their first use, including:

- SANDY CANDY®
- CRIME SCENE CANDY®
- CANDY BLOOD CLOTS™
- BOOGERS™

41.   SANDY CANDY®—Attached as **Exhibit A** is a true and correct copy of U.S. Registration No. 2,415,707.  Can You Imagine That! Confections has been using the SANDY CANDY® mark in commerce in connection with edible candy sand art since at least 1998 and filed a trademark application for this mark on December 27, 1999.  The SANDY CANDY® mark, along with all other intellectual property and rights thereto, were transferred and assigned to Candyman in May 2017.

42.   CRIME SCENE CANDY®—Attached as **Exhibit B** is a true and correct copy of U.S. Registration No. 5,670,600.   Can You Imagine That! Confections first used the CRIME SCENE CANDY® mark in connection with

1    candy by April 30, 2009; and Plaintiff Candyman filed a trademark application for
2    this mark on August 21, 2018.

3        43.    CANDY BLOOD CLOTS™—Attached as **Exhibit C** is a true and
4    correct copy of U.S. Application Serial No. 88/666,939.  The CANDY BLOOD
5    CLOTS™ mark was used in commerce by Can You Imagine That! Confections, in
6    connection with candy, at least as of March 24, 2011.  Plaintiff Candyman filed a
7    trademark application for this mark on October 24, 2019.

8        44.    BOOGERS™—Attached as **Exhibit D** is a true and correct copy of
9    U.S. Application Serial No. 88/748,048. The BOOGERS™ mark was used in
10   commerce by Candyman, in connection with candy, at least as of March 24, 2011.
11   Plaintiff Candyman filed a trademark application for this mark on January 6, 2020.

12       45.    As a direct result of their novel and distinctive design, packaging, and
13   marks—as well as the substantial time, money, and resources invested in promoting
14   the marks and brands under which the products are sold—Candyman's products
15   became popular with customers of novelty candy.  The appearance, marks, and
16   brands of Candyman's products have become widely recognized and uniquely
17   associated with Mr. Klein's companies and brands, Candyman and Can You
18   Imagine That! Confections, as their source.

19       46.    In addition to being known and associated with Mr. Klein's companies
20   and wide-spread reputation in the candy industry, Candyman's products and marks
21   have independently earned substantial praise and goodwill from customers and
22   consumers and achieved secondary meaning as an identifier of high-quality,
23   uniquely creative, novelty candy.  Positive commentary and praise for Candyman's
24   products have been submitted by customers, often in the form of online product
25   reviews displayed alongside images of Candyman's products.  (*See supra*, ¶¶ 25–
26   33.)

27

28

III.   Defendants' Knowledge and Notice of Candyman's Intellectual Property

47.   Defendants are well aware that Candyman owns and uses the marks, as evinced at least by (1) Candyman's federal registrations and applications; (2) Defendants' written statements in multiple emails recognizing that Can You Imagine That! Confections owned the marks; (2) the registration of the assignment from Can You Imagine That! Confections to Candyman with the U.S. Patent & Trademark Office; and (3) the recent Opposition before the U.S. Trademark Trial and Appeal Board ("TTAB") filed by Candyman in response to Defendants' attempt to register the BOOGERS mark as their own.

48.   In early 2017, as part of the relocation to Florida, Can You Imagine That! Confections began discussing the sale of its manufacturing facility in Covina, CA with Defendant Sweets Indeed and Defendant Dannettelle.

49.   Specifically, after expressing initial interest in acquiring Can You Imagine That! Confections's manufacturing facility, Defendant Dannettelle discussed the details of the prospective purchase with Mr. Klein.  On information and belief, while negotiating the terms of the transaction in February 2017, Defendant Dannettelle wrote to Mr. Klein that Defendants were "not interested in buying the business outright" and Mr. Klein "would keep the . . . Can You Imagine That! Confections, Inc. brand as [Defendants] are not interested in taking that on." Notably, Ms. Dannettelle asked Mr. Klein whether he understood that he (through his companies) would "get to keep [his] names and trademarks."   Mr. Klein confirmed to Ms. Dannetele that "[n]o trademarks go with the deal," his companies "would retain the [S]andy [C]andy trademark," and "[t]he company was never part of the deal."

50.   As a result of these discussions, in March 2017, Can You Imagine That! Confections and Defendant Sweets Indeed entered into an Asset Purchase Agreement governing the conveyance of assets, namely the manufacturing facility

1  in Covina, CA.  The purchase was secured by a Promissory Note executed by
2  Defendant Dannettelle.

3       51.    As memorialized in the Asset Purchase Agreement, as well as the
4  written communications surrounding the transaction, Candyman's trademarks (as
5  well as goodwill, URL domains and websites, computer hardware and software,
6  and other non-fixed assets) were expressly excluded from the purchase.

7       52.    On information and belief, after moving into the Covina, CA
8  manufacturing facility in early April 2017, Sweets Indeed began promoting,
9  offering for sale, and manufacturing novelty candy products, including the replica
10 products.

11      53.    On May 3, 2017, Can You Imagine That! Confections transferred
12 ownership of its intellectual property, including trademarks, to Plaintiff Candyman.
13 The assignment of the registered trademarks was and is recorded with the U.S.
14 Patent & Trademark Office.

15      54.    Thereafter, Can You Imagine That! Confections continued its business
16 operations without interruption and as authorized brand under Candyman to use
17 Candyman's intellectual property, including the SANDY CANDY®, CRIME
18 SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ marks, in
19 connection with candy and confectionary.

20      55.    On February 13, 2019, Defendant Sweets Indeed filed an application
21 for registration of the BOOGERS mark (U.S. Application Serial No. 88/299,940).
22 Plaintiff Candyman timely opposed Sweets Indeed's application.  Attached as
23 **Exhibit E** is a true and correct copy of the Opposition filed by Candyman
24 (hereinafter, "Opp.").

25      56.    Among other facts, the Opposition alleged that Candyman is the
26 "owner of all right, title and interest in and to the mark BOOGERS used alone or
27 in combination with a design . . . for a variety of confectionary and candy."  (Opp.
28 ¶ 1.)  Candyman explained that it had "established common law rights in [the]

1  BOOGERS Marks through continuous use on its candy products . . . since 2011."

2  (Opp. ¶¶ 3–4.)  The marks for which Candyman held common law rights include,

3  but is not limited to, ZOMBIE BOOGERS, UNICORN BOOGERS, and DRAGON

4  BOOGERS.  (Opp. ¶ 2.)

5      57.    Further, Candyman's Opposition described the confusion that would

6  likely arise if Sweets Indeed were permitted to use the mark in connection with its

7  products.  (*E.g.*, Opp. ¶ 12 ("Upon seeing [Sweets Indeed]'s mark, members of the

8  public are likely to be confused, mistaken, or misled into believing that [Sweets

9  Indeed] has obtained a license from [Candyman] or that [Sweets Indeed] is

10  otherwise affiliated or connected with, or sponsored by [Candyman], or that

11  [Candyman] has endorsed [Sweets Indeed]'s goods.")

12      58.    On June 20, 2019, the TTAB instituted the opposition proceeding

13  against Sweets Indeed's application for the BOOGERS mark.  (Proceeding No.

14  91248988.)  The TTAB set discovery to commence on August 29, 2019.  After over

15  3 months of discovery, Sweets Indeed withdrew its application for the BOOGERS

16  mark.

17  IV.    Defendants' Deliberate and Intentional Manufacture, Promotion, and Sale of

18  Replica Products

19      59.    Despite being aware of Candyman's products and marks, on

20  information and belief, Defendants have used, copied, reproduced, or manufactured

21  exact replicas of Candyman's products, including Candyman's brands and

22  trademarks, to distribute, display, market, sell and place in the stream of commerce

23  products that are substantially the same and virtually identical to Candyman's

24  products.  Defendants' replica products are certain to mislead, deceive, and cause

25  confusion, and, in fact, already have misled, deceived, and confused.

26

27

28

60.   On information and belief, Defendants knowingly and intentionally caused customers to be misled, deceived, and confused regarding the origin of the replica products.

61.   For example, on information and belief, Defendant Dannettelle knowingly and intentionally promoted, sold, and offered for sale replica products that used, copied, or reproduced Candyman's company names, brands, trademarks, and trade dress; despite having been aware of and participated in the proceedings regarding Sweets Indeed's unsuccessful attempt to register the BOOGERS mark, as described above.

62.   Additionally, on information and belief, Defendant Sweets Indeed distributed, displayed, marketed, sold, offered for sale, and placed in the stream of commerce products that are substantially the same and virtually identical to Candyman's products, in that they copied or reproduced Candyman's trademarks and trade dress.

63.   To illustrate, on information and belief, after Can You Imagine That! Confections's manufacturing facility was acquired, Defendant Dannettelle sent a letter to Candyman's customers, in which she notifies the recipients that Defendant Sweets Indeed offers "the same products" as Candyman's products.  (**Exhibit F**.) Dannettelle's letter states:

> "Recently, my company acquired the candy manufacturing facility formerly belonging to 'Can You Imagine That! Confections,' also known as 'Nifty Candy Company.'  **This letter is part of an ongoing effort to reach out to former customers of Can You Imagine That! Confections and ensure you are aware that we are continuing to make many of the same products as those that you were previously ordering**."

(*Id*. (emphasis added).)

64.     Additionally, Defendants' use of Candyman's marks, brands, and trade dress creates a high likelihood of confusion, at least because Defendants have represented that their replica products are "the same" as Candyman's products; Defendants' replica products are marketed and sold as though they originate from Candyman; and Defendants have altered nothing about Candyman's marks, brands, and trade dress.

65.     By replicating the entire appearance and meaning of Candyman's marks and trade dress, Defendants have profited and continue to profit from customers' association with the goodwill and positive reputation signaled by Candyman's marks, brands, trade dress.

66.     Candy Warehouse is just one example of the actual deception, misinformation, and confusion caused by Defendants' acts.  Candy Warehouse is an established online candy retailer and distributor that, according to its website, carries over 6,000 varieties of candy and has been in business since 1998.  (Candy Warehouse homepage and About Us, *available at* www.candywarehouse.com.)

67.     On information and belief, despite having not sold any of its products to Candy Warehouse in the past few years, several of Candyman's products are still displayed for sale on Candy Warehouse's website as of the filing of this Complaint. According to Candy Warehouse, these products been sold to Candy Warehouse's customers at least through 2019.

68.     For example, below is a screenshot showing Sandy Candy and Crime Scene Candy products being displayed and offered for sale on the Candy Warehouse website:



69.     On information and belief, the Sandy Candy and Crime Scene Candy products that are advertised, offered for sale, and sold through Candy Warehouse do not originate from Candyman and, instead, are Defendants' replica, counterfeit products.

70.     Tellingly, on information and belief, when Candy Warehouse was asked about its source for these products, a customer sales representative stated that he/she was unable to definitively determine whether Candy Warehouse's stock originated from Defendant Sweets Indeed or Candyman.

71.     Notably, Candy Warehouse's customer service representative expressed a (mistaken) belief that "Sweet[s] Indeed and Can You Imagine [That] are together" and "either the same company or merged.  When asked what Sweets Indeed products are sold by Candy Warehouse, the representative pointed to a link to Can You Imagine That! Confections's webpage: *https://www.candywarehouse.com/can-you-imagine-candy*.

72.     On information and belief, Defendant Sweets Indeed promotes, advertises, markets, distributes, offers for sale, and sells its replica products, which are virtually identical to Candyman's products, to customers across the U.S., including on Amazon, Candy Warehouse, Etsy, Instagram, Facebook, Twitter, Grocery.com, and other online channels.

1      73.    For example, below are images of Sweets Indeed's candy **Blood Clots**

2   being advertised, offered for sale, and sold through Amazon and Sweets Indeed's

3   own website:

4

5



6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18    74.    For comparison, below are images of Candyman's candy **Blood Clots**:

19
20
21
22
23
24
25
26
27
28



75.     Similarly, on information and belief, Sweets Indeed advertises, offers for sale, and sells replica candy **Boogers** on its website.  Below are exemplary screenshots:



CANDYMAN'S THIRD AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16      76.    On information and belief, Sweets Indeed advertises, displays, and
17  offers for sale a variety of **Boogers** candy products through its virtual storefront on
18  Amazon.  Below are exemplary images:

19
20
21
22
23
24
25
26
27



28

1

2

3

4

5

6

7

8

9    77.    For comparison, below are images of Candyman's Zombie Boogers

10   and Unicorn Boogers products:

11

12

13

14

15

16

17

18

19   78.    On information and belief, Defendants also advertise, promote,

20   distribute, offer for sale and sell the replica candy products through Etsy.  For

21   example, below are images of user-submitted reviews of candy Unicorn Boogers

22

23

24

25

26

27

28

and Zombie Boogers posted on webpages that appear to be managed and controlled

by Sweets Indeed, and hosted on Etsy.com:



79.    On information and belief, Defendants also advertise, market, and

promote the replica candy products through Instagram.  On information and belief,

the images below, excerpted from Instagram, were submitted by customers and

employees of Sweets Indeed and describe replica products, particularly **Zombie Boogers** and **Crime Scene Candy**, being advertised and sold by Sweets Indeed:







80.    On information and belief, Defendants also advertise, market, and promote their replica products on various other websites and internet platforms, including Facebook and Twitter.

81.    For example, the following image shows a Facebook post by the Sweets Indeed account that promotes candy Boogers, including Zombie Boogers,

Unicorn Boogers, and Dinosaur Boogers, and encourages the public to visit the Sweets Indeed website to make a purchase:



CANDYMAN'S THIRD AMENDED COMPLAINT

82.    Another post by the same Sweets Indeed account depicts candy Blood Clots, Zombie Boogers, and Ghost Boogers, and encourages readers to visit Sweets Indeed's Amazon store to buy the products:



83.    Similarly, on information and belief, below is an image of posts (i.e., tweets) from Sweets Indeed's Twitter account.  A tweet from November 11, 2018, describes a forthcoming "Holiday Boogers Collection" product and encourages readers to visit Facebook to learn more and Amazon to make a purchase:



84.     On information and belief, Defendants have received significant revenue from sales of candy products that make use of Candyman's marks, brands, and trade dress.

85.     For example, on information and belief, Sweets Indeed has at least $ 225,000 in sales of just the candy Boogers products sold through Amazon.

86.     To further illustrate, on information and belief, at least 457 units of Crime Scene Candy—that originated from Sweets Indeed but promoted and sold using Candyman's marks and brand names—have been sold through Candy Warehouse from 2018–2019.

87.     Defendants have no license from Candyman to use, reproduce, or display Candyman's marks, brands, or trade dress.

## COUNT I

## Trademark Infringement and Counterfeiting Under 15 U.S.C. § 1114(1)

88.     Candyman reallege and incorporate the preceding paragraphs of this Complaint as though fully set forth herein.

89.     Based on the acts, conduct, and events described above, Defendants have infringed Candyman's registered SANDY CANDY® and CRIME SCENE CANDY® marks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

90.     Candyman is the owner or authorized user of all right and title to the registered SANDY CANDY® and CRIME SCENE CANDY® marks.

91.     Defendants' use of Candyman's trademarks in connection with the promotion, distribution, offer for sale, and/or sale of candy and confectionary is likely to cause confusion, or to cause mistake, or to deceive about the identity and origin of the goods.

92.     On information and belief, Defendants' use of Candyman's marks has been intentional, willful and malicious.  Defendants' bad faith is evinced at least by their unlawful use of Candyman's marks that is intended to cause customers to be

confused, mistaken, or deceived that Defendants' products are "the same" as Candyman's products or originate from Candyman.

93.  Defendants' infringement of the SANDY CANDY® and CRIME SCENE CANDY word marks extends beyond products that are covered by Candyman's trade dress rights.  That is, Defendants' use of the marks to confuse consumers and the public extends to Defendants' candy products, and promotion and advertising thereof, that may not be covered by Candyman's trade dress rights.

94.  **In addition to the alleged facts above, the following allegations demonstrate likelihood of confusion:**

a.  Candyman's SANDY CANDY® and CRIME SCENE CANDY® marks are arbitrary and have acquired secondary meaning.

b.  Candyman and Can You Imagine That! Confections have done extensive in-person and online, written, photographic, and video, promotion and advertising featuring each of the marks.  As examples, Candyman has engaged with bloggers to review its products and manufacturing facility; its founders have participated in numerous interviews in order to promote the products associated with the marks; and displayed its products, which bear the marks, through several online channels, including Amazon, its own websites, and Candy Warehouse.

c.  Candyman and Can You Imagine That! Confections have also developed a substantial amount of business and goodwill through word of mouth, including the support from the public who know of Mr. Klein's experiences in the candy industry.  Candyman and Can You Imagine That! Confections have provided superior goods and services to their customers; and their customers choose and have chosen to do business with Candyman because they intend to and believe they are supporting goods originating from or affiliated with the Kleins and Mr. Klein's businesses.  Candyman's marks are associated with and indicators of Candyman's outstanding service,

high-quality and innovative products, and strong reputation.  As a result, Candyman has developed substantial goodwill and customer support over the years.

d.    Defendants have used Candyman's marks at least online, including on social media, as described above.  On information and belief, Defendants' online and social media activities use Candyman's marks and deceptively promote and encourage potential customers to purchase Defendants' candy products on Defendants' websites or third-party online sellers, e.g., Amazon, Candy Warehouse, and Etsy.

e.    Defendants' use of the each of Candyman's marks is identical to Candyman's mark.

f.    Defendants use Candyman's marks for promoting, advertising, and encouraging the sale of candy and confectionary that are substantially identical to Candyman products.  In addition, Defendants derived additional benefit, including the promotion and sale of Defendants' other products, by improperly using to Candyman's marks to garner the goodwill, publicity, and reputation of Candyman.

g.    Defendants' use of Candyman's arbitrary SANDY CANDY® and CRIME SCENE CANDY® marks to promote candy and confectionary products that Defendants stated were meant to be "the same" as, and which are in fact substantially identical to, Candyman's products evinces Defendants' bad faith.   Additionally, Defendants' continued willful infringement also evidences bad faith.

95.    Because of Defendants' unlawful use and infringement of Candyman's trade dress, Candyman has suffered and will suffer harm and injury to its property rights and goodwill; and Defendants have been and will continue to be unjustly enriched thereby.

96.     Candyman is entitled to recover at least Defendants' profits from their infringing sales, Candyman's actual damages, statutory damages, enhanced damages, injunctive relief, costs, and reasonable attorneys' fees pursuant at least to 15 U.S.C. §§ 1114(1), 1116, and 1117.

## COUNT II

## Trademark Infringement Under 15 U.S.C. § 1125(a) and Common Law

97.     Candyman realleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

98.     Candyman has prior rights in and is the owner of Candyman's registered trademarks and other unregistered marks, SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™.

99.     Defendants' products bearing or otherwise displaying or using Candyman's marks have infringed Candyman's marks by using identical or similar names in Defendants' products.

100.    Defendants' use of their infringing product names and descriptions is likely to cause confusion or mistake, or to deceive the consumer as to the affiliation, association, connection, endorsement, or authorization of Defendants and their products, with Candyman; or as to the origin, sponsorship, or approval by Candyman of Defendants' goods, services, or commercial activities.  Further, at least with respect to the BOOGERS mark, Defendants' bad faith is also evinced by their disregard for Candyman's rights and the likelihood of confusion and mistake, despite being notified of their unlawful conduct during the Opposition before the U.S. Trademark Trial and Appeal Board.

101.    **In addition to the alleged facts above, the following allegations demonstrate likelihood of confusion:**

a.     Candyman's SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ marks are arbitrary and have acquired secondary meaning.

b.      Candyman and Can You Imagine That! Confections have done extensive in-person and online, written, photographic, and video, promotion and advertising featuring each of the marks.  As examples, Candyman has engaged with bloggers to review its products and manufacturing facility; its founders have participated in numerous interviews in order to promote the products associated with the marks; and displayed its products, which bear the marks, through several online channels, including Amazon, its own websites, and Candy Warehouse.

c.      Candyman and Can You Imagine That! Confections have also developed a substantial amount of business and goodwill through word of mouth, including the support from the public who know of Mr. Klein's experiences in the candy industry.  Candyman and Can You Imagine That! Confections have provided superior goods and services to their customers; and their customers choose and have chosen to do business with Candyman because they intend to and believe they are supporting goods originating from or affiliated with the Kleins and Mr. Klein's businesses.  Candyman's marks are associated with and indicators of Candyman's outstanding service, high-quality and innovative products, and strong reputation.  As a result, Candyman has developed substantial goodwill and customer support over the years.

d.      Defendants have used Candyman's marks at least online, including on social media, as described above.  On information and belief, Defendants' online and social media activities use Candyman's marks and deceptively promote and encourage potential customers to purchase Defendants' candy products on Defendants' websites or third-party online sellers, e.g., Amazon, Candy Warehouse, and Etsy.

e.      Defendants' use of the each of Candyman's marks is identical to Candyman's mark.

1           f.       Defendants use Candyman's marks for promoting, advertising, and encouraging the sale of candy and confectionary that are substantially identical to Candyman products.  In addition, Defendants derived additional benefit, including the promotion and sale of Defendants' other products, by improperly using to Candyman's marks to garner the goodwill, publicity, and reputation of Candyman,

           g.       Defendants' use of Candyman's arbitrary SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ marks to promote candy and confectionary products that Defendants stated were meant to be "the same" as, and which are in fact substantially identical to, Candyman's products evinces Defendants' bad faith.   Additionally, Defendants' continued willful infringement also evidences bad faith.

102. Because of Defendants' unlawful use and infringement of Candyman's trade dress, Candyman has suffered and will suffer harm and injury to its property rights and goodwill; and Defendants have been and will continue to be unjustly enriched thereby.

103. Candyman are entitled to recover at least Defendants' profits from their infringing sales, Candyman's actual damages, statutory damages, enhanced damages, injunctive relief, costs, and reasonable attorneys' fees pursuant at least to 15 U.S.C. §§ 1114(1), 1116, and 1117.

## COUNT III

## False Designation of Origin and Descriptions Under 15 U.S.C. § 1125(a)

104. Candyman realleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

105. Based on the acts, conduct, and events described above—including, for example, Defendants' use of Candyman's SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ marks and

1   Candyman's Can You Imagine That! Confections brand, and colorable imitations
2   thereof—Defendants violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).
3   Defendants' unauthorized use of Candyman's trademarks and colorable imitations
4   thereof is likely to cause confusion, mistake, or deception about the affiliation,
5   connection, and association of Defendants with Candyman; and about the origin,
6   sponsorship, and approval of the Defendants' products, at least by creating the false
7   and misleading impression that the products are manufactured by, authorized by,
8   or otherwise associated with Candyman or or its predecessors or its founders.

9        106.   Candyman's marks are entitled to protection under the Lanham Act.
10   Candyman and Can You Imagine That! Confections have extensively promoted
11   and used its trademarks in the United States.   Through that extensive and
12   continuous use, Candyman's trademarks have become well-known indicators of the
13   origin and quality of Candyman's products.  Candyman's trademarks have also
14   acquired substantial secondary meaning in the marketplace.     Moreover,
15   Candyman's trademarks acquired this secondary meaning before Defendants
16   commenced their unlawful use of Candyman's trademarks in connection with
17   Defendants' products.

18        107.   **In addition to the alleged facts above, the following allegations**
19   **demonstrate likelihood of confusion:**

20        a.      Candyman's SANDY CANDY®, CRIME SCENE CANDY®,
21   CANDY BLOOD CLOTS™, and BOOGERS™ marks, and Can You
22   Imagine That! Confections brand, are arbitrary and have acquired secondary
23   meaning.

24        b.      Candyman and Can You Imagine That! Confections have done
25   extensive in-person and online, written, photographic, and video, promotion
26   and advertising featuring each of the marks.  As examples, Candyman has
27   engaged with bloggers to review its products and manufacturing facility; its
28   founders have participated in numerous interviews in order to promote

Candyman's products, marks, brands, and trade dress; and displayed its products, which bear the marks, through several online channels, including Amazon, its own websites, and Candy Warehouse.

c.      Candyman and Can You Imagine That! Confections have also developed a substantial amount of business and goodwill through word of mouth, including the support from the public who know of Mr. Klein's experiences in the candy industry.  Candyman and Can You Imagine That! Confections have provided superior goods and services to their customers; and their customers choose and have chosen to do business with Candyman because they intend to and believe they are supporting goods originating from or affiliated with the Kleins and Mr. Klein's businesses.  Candyman's marks are associated with and indicators of Candyman's outstanding service, high-quality and innovative products, and strong reputation.  As a result, Candyman has developed substantial goodwill and customer support over the years.

d.      Defendants have used Candyman's marks at least online, including on social media, as described above.  On information and belief, Defendants' online and social media activities use Candyman's marks and deceptively promote and encourage potential customers to purchase Defendants' candy products on Defendants' websites or third-party online sellers, e.g., Amazon, Candy Warehouse, and Etsy.

e.      Defendants' use of the each of Candyman's marks is identical or a colorable imitation to Candyman's mark.

f.      Defendants use Candyman's marks for promoting, advertising, and encouraging the sale of candy and confectionary that are substantially identical to Candyman products.  In addition, derived additional benefit, including the promotion and sale of Defendants' other products, by

1   improperly using to Candyman's marks to garner the goodwill, publicity, and

2   reputation of Candyman,

3         g.      Defendants' use of Candyman's arbitrary SANDY CANDY®,

4   CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and

5   BOOGERS™ marks to promote candy and confectionary products that

6   Defendants stated were meant to be "the same" as, and which are in fact

7   substantially identical to, Candyman's products evinces Defendants' bad

8   faith.    Additionally, Defendants' continued willful infringement also

9   evidences bad faith.

10  108.  Because of Defendants' unlawful use and infringement of

11  Candyman's trade dress, Candyman has suffered and will suffer harm and injury to

12  its property rights and goodwill; and Defendants have been and will continue to be

13  unjustly enriched thereby.

14  109.  Candyman is entitled to recover at least Defendants' profits from their

15  infringing sales, Candyman's actual damages, statutory damages, enhanced

16  damages, injunctive relief, costs, and reasonable attorneys' fees pursuant at least to

17  15 U.S.C. §§ 1114(1), 1116, and 1117.

18  **COUNT IV**

19  **Trade Dress Infringement Under 15 U.S.C. § 1125(a)**

20  110.  Candyman realleges and incorporates the preceding paragraphs of this

21  Complaint as though fully set forth herein.

22  111.  Candyman owns all right and title to the distinctive trade dress of its

23  Sandy Candy, Crime Scene Candy, candy Blood Clots, and candy Boogers

24  products, including the translucent vials with opaque caps/closures, the size and

25  horizontal position of the product label identifying the product, and the font and

26  colors used in the product labels (as shown in the images above).

27  112.  Candyman's trade dress of the aforementioned products are a

28  designation of origin that identifies Candyman as the exclusive source of its goods,

and distinguishes Candyman's goods from the goods of others, including Defendants, in the marketplace.

113.   **In addition to the alleged facts above, the following allegations demonstrate likelihood of confusion:**

a.   Since prior to 1998, Candyman and Can You Imagine That! Confections have expended substantial time and resources developing, advertising, and promoting the product design and packaging for the Sandy Candy, edible "sand" art candy, product, which embodies Candyman's trade dress.

b.   Candyman's distinctive trade dress for the Sandy Candy products includes cylindrical bottles that: are made of flexible plastic that allows the bottle to be depressed or "squeezed" to dispense the product; are translucent or semi-translucent so that at least the color and remaining quantity of the product may be viewed; are enclosed with a lid or a cap with pointed tip; and each contain product of a single, uniform color.

c.   Candyman's distinctive trade dress for the Sandy Candy products also includes tubes or vials with rounded bottom that:  are made of rigid or semi-rigid plastic; are translucent or semi-translucent so that at least the color and remaining quantity of the product may be viewed; are enclosed with a lid or cap with flat top; and each contain product of a single, uniform color.

d.   Since at least April 30, 2009, Candyman and Can You Imagine That! Confections have expended substantial time and resources developing, advertising, and promoting the product design and packaging for Crime Scene Candy product, which embodies Candyman's trade dress.

e.   Candyman's distinctive trade dress for the Crime Scene Candy products includes tubes or vials with rounded bottom that:  are made of rigid or semi-rigid translucent plastic; are enclosed with a lid or cap with flat top;

and has a multicolored, rectangular-shaped label affixed such that the length of the label runs along the length of the tube/vial (i.e., horizontally affixed) and does not obscure the contents of the tube/vial from view..

f.        Since at least March 24, 2011, Candyman and Can You Imagine That! Confections have expended substantial time and resources developing, advertising, and promoting the product design and packaging for candy Blood Clots product, which embodies Candyman's trade dress.

g.        Candyman's distinctive trade dress for the Blood Clots products includes tubes or vials with rounded bottom that:  are made of rigid or semi-rigid translucent plastic; are enclosed with an opaque lid or cap with flat top; contains a product that is decoratively colored red; and has a rectangular-shaped label affixed such that the length of the label runs along the length of the tube/vial (i.e., horizontally affixed) and does not obscure the contents of the tube/vial from view.

h.        Since at least March 24, 2011, Candyman and Can You Imagine That! Confections have expended substantial time and resources developing, advertising, and promoting the product design and packaging for the candy Boogers line of products, which embodies Candyman's trade dress.

i.        Candyman's distinctive trade dress for the Boogers line of products includes tubes or vials with rounded bottom that:  are made of rigid or semi-rigid translucent plastic; are enclosed with an opaque plastic lid or cap with flat top; and has a rectangular-shaped label affixed such that the length of the label runs along the length of the tube/vial (i.e., horizontally affixed) and does not obscure the contents of the tube/vial from view.

j.        Candyman and Can You Imagine That! Confections have cultivated the unique and distinctive overall appearance of the aforementioned products, such that consumers and jewelers are easily able

to identify such products as originating from and associated with Candyman. Candyman's product designs and packaging are distinctive.

k.     Candyman and Can You Imagine That! Confections have done extensive in-person and online, written, photographic, and video, promotion and advertising featuring the product design, packaging, and overall appearance of each of the products.

l.     The design and appearance of Defendants' replica "sand art" products, Crime Scene Candy, candy Blood Clots, and variety of candy Boogers products are substantially the same as Candyman's product designs, packaging, and overall appearance at least online, including on social media, as described above.  On information and belief, Defendants' online and social media activities use Candyman's marks and deceptively promote and encourage potential customers to purchase Defendants' candy products on Defendants' websites or third-party online sellers, e.g., Amazon, Candy Warehouse, and Etsy.

m.     There is evidence of actual confusion created by Defendants' promotion of candy products substantially identical to Candyman's products; for example, those sold through Candy Warehouse.

n.     Defendants advertise, promote and market their replica products in the same channels of trade as Candyman's products in the United States, including this District.

o.     Upon information and belief, Defendants deliberately adopted the appearances of their candy sand art products, Crime Scene Candy, candy Blood Clots, and candy Boogers in order to trade upon and benefit from the hard-earned goodwill, publicity, and reputation of Candyman, Can You Imagine That! Confections, and their founders; and Defendants have deliberately tried to ride Candyman's coattails to capitalize on Candyman's trade dress.

1    p. Defendants' bad faith is evidenced at least by the similarity in

2 design, packaging, and appearance of Defendants' candy "sand art"

3 products, Crime Scene Candy, candy Blood Clots, and candy Boogers;

4 Defendants' use of Candyman's marks; and Defendants' continued use of

5 Candyman's intellectual property and resulting likelihood of confusion,

6 despite having knowledge and being notified of their unlawful conduct.

7 Thus, Defendants' infringement is willful and this action is an exceptional

8 case.

9   114. Because of Defendants' unlawful use and infringement of

10 Candyman's trade dress, Candyman has suffered and will suffer harm and injury to

11 its property rights and goodwill; and Defendants have been and will continue to be

12 unjustly enriched thereby.

13   115. Candyman is entitled to recover at least Defendants' profits from their

14 infringing sales, Candyman's actual damages, statutory damages, enhanced

15 damages, injunctive relief, costs, and reasonable attorneys' fees pursuant at least to

16 15 U.S.C. §§ 1116, 1117, and 1125.

17          **COUNT V**

18      **Common Law Unfair Competition**

19   116. Candyman realleges and incorporates the preceding paragraphs of this

20 Complaint as though fully set forth herein.

21   117. On information and belief, Defendants, by careful and considered

22 planning, have promoted the design, appearance, and descriptions of Defendants'

23 replica candy "sand art" products, Crime Scene Candy, candy Blood Clots, and

24 candy Boogers products using Candyman's trademarks to consumers and the

25 public, in order to confuse, mislead, and deceive, and obtain the acceptance of their

26 goods, services, or commercial activities, based on the merit, reputation, and

27 goodwill of Candyman, its brands, and its high-quality goods and services.

28

118.   Defendants' actions and conduct constitute oppression and malice in that they have intentionally engaged in activities designed to confuse and deceive the public and to divert to Defendants sales that Candyman would have otherwise enjoyed.

119.   Candyman also alleges that Defendants have misappropriated and unlawfully exploited the valuable property rights and goodwill of Candyman and Candyman's products through Defendants' use of Candyman's intellectual property.  Because of this misappropriation, Candyman has suffered and will suffer damages and injury to its property and goodwill, including destruction of the business value of Candyman's trade dress and trademarks, and Defendants have been and will continue to be unjustly enriched thereby.

## COUNT VI

## Deceptive, False, and Misleading Advertising Under Cal. Bus. & Prof. Code §§ 17500 *et seq.*

120.   Candyman realleges and incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

121.   Since substantially prior to Defendants' first use of Candyman's SANDY CANDY®, CRIME SCENE CANDY®, CANDY BLOOD CLOTS™, and BOOGERS™ marks, and Candyman's product designs, packaging, and appearance, Candyman has had valid and protectable rights in its widely recognized and famous trademarks and trade dress in connection with candy and confectionary.

122.   On information and belief, Defendants knew or should have known of Candyman's ownership, rights to, and use of Candyman's marks and trade dress prior to Defendants' use of the same to advertise, promote, market, distribute, sell, or offer for sale their candy and confectionary products.

123.   Further, Defendants' unlicensed and unauthorized use of Candyman's trademarks and trade dress is likely to cause confusion and mislead and deceive consumers and the public to believe there is a relationship between Defendants and

Candyman or Can You Imagine That! Confections; that Candyman or its predecessors or its founders are affiliated or associated with, or sponsor, Defendants; or that Defendants' products are manufactured by, authorized by, originated from, or otherwise associated with Candyman or its predecessors or founders. Such falsely claimed association and misleading advertising violates California Business & Professions Code §§ 17500 *et seq*.

124. Defendants' conduct constitutes unlawful business acts or practices in that Defendants' deceptive, false, and misleading advertising and promotion are likely to mislead or deceive the public into purchasing or consuming goods or services they would not otherwise purchase or consume, resulting in Defendants obtaining sales, profits, publicity, and goodwill that Candyman should have received.

125. On information and belief, Defendants have acted with knowledge and intention to mislead and deceive the public, and cause sales, profits, publicity, and goodwill to be diverted from Candyman and, instead, unjustly enrich Defendants. Such willful and malicious unlawful business practices support an award of exemplary or punitive damages, under California Civil Code § 3294, in an amount sufficient to deter them from, and make an example of, such continued and egregious conduct.

126. Defendants should be required to restore to Candyman any and all profits and unjust enrichment received as a result of its unlawful business acts or practices.

## COUNT VII

### Unfair Competition Under Cal. Bus. & Prof. Code §§ 17200 *et seq.*

127. Defendants' conduct constitutes unlawful business acts or practices in that Defendants have engaged in at least (1) trademark infringement under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114, 1125; (2) false designation of origin and false descriptions under Section 43 of the Lanham Act, 15 U.S.C. § 1125

1   (3) trade dress infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1125;

2   and (4) deceptive, false, and misleading advertising under California Business and

3   Professions Code §§ 17500, *et seq.*

4       128.   Defendants' conduct constitutes unlawful business acts or practices in

5   that Defendants' trademark infringement; false designation of origin and false

6   descriptions; trade dress infringement; and deceptive, false, and misleading

7   advertising and promotion are likely to—and indeed already have—mislead or

8   deceive the public into purchasing or consuming goods or services they would not

9   otherwise purchase or consume, resulting in Defendants obtaining sales, profits,

10  publicity, and goodwill that Candyman should have received.

11      129.   As a direct and proximate result of Defendants' wrongful and unlawful

12  conduct described in this Complaint, Candyman has been, is now, and will continue

13  to be harmed and damaged by Defendants' aforementioned acts.   Defendants'

14  unfair and unlawful business acts and practices have, and continue to, injure and

15  harm Candyman's name, business reputation, property, and goodwill.

16      130.   On information and belief, Defendants have acted with full knowledge

17  and notice of Candyman's rights, and with the intention to infringe on or otherwise

18  violate such rights and, therefore, their aforementioned acts are willful, intentional,

19  oppressive, and malicious.   Such conduct and unlawful business practices supports

20  an award of exemplary or punitive damages, under California Civil Code § 3294,

21  in an amount sufficient to deter them from, and make an example of, such continued

22  and egregious conduct.

23      131.   Defendants should be required to restore to Candyman any and all

24  profits and unjust enrichment received as a result of its unlawful business acts or

25  practices.

26                **JOINT AND SEVERAL LIABILITY**

27      132.   Candyman realleges and incorporates the preceding paragraphs of this

28  Complaint as though fully set forth herein.

133. At all relevant times, Defendants were jointly engaged in the commission of the aforementioned unlawful and tortious actions. On information and belief, Defendants Sweets Indeed and Marie E. Dannettelle acted intentionally and their actions caused a single, indivisible injury to Plaintiff. Accordingly, Defendants are jointly and severally liable for all of Candyman's damages as pleaded herein.

## JURY DEMAND

134. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Candyman demands a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

**WHEREFORE**, Candyman respectfully requests relief as follows:

a)      That judgment be entered in favor of Candyman on its claims of trademark infringement; false designation of origin; trade dress infringement; deceptive, false, and misleading advertising; and unfair competition;

b)      That judgment be entered finding that Defendants' unlawful actions and conduct were willful, malicious, oppressive, and intentional;

c)      Compensatory damages for actual loss, statutory damages, and/or unjust enrichment, as permitted by law, caused by Defendants' unlawful acts and conduct;

d)      Enhanced, exemplary, and/or punitive damages for Defendants' willful and intentional violation of Candyman's rights in its trademarks and trade dress, as well as willful, malicious oppressive, and intentional unlawful conduct;

e)      An award of Candyman's reasonable attorneys' fees and costs associated with this action as provided for under 15 U.S.C. § 1117 or other such applicable law;

f)      Injunctive or other equitable relief, including an order to immediately cease and discontinue making, using, promoting, advertising, marketing, displaying, selling, or offering for sale any product or service that violates

1  Candyman's rights;

2      g)    Entry of an order directing Defendants to surrender to Candyman all

3  property, tangible and intangible, including, but not limited to, all goods,

4  merchandise, and materials that infringe or otherwise Candyman's intellectual

5  property rights, and all tooling, templates, patterns, or other means and media used

6  by Defendants to copy, manufacture, reproduce, publish, display, distribute,

7  transmit, market, promote, license and sell products covered by Candyman's trade

8  dress;

9      h)    Pre-judgment and post-judgment interest; and

10      i)    Such other and further relief as the Court may deem just and proper.

11

12  DATED: May 6, 2020                Respectfully Submitted,

13

14

15                              By /s/ Jodie W. Cheng

16                                  JWC LEGAL

17                                  Jodie W. Cheng (SBN 292330)
                                    jodie@jwc-legal.com

18                                  445 South Figueroa Street, 31st Floor
                                    Los Angeles, California 90071

19                                  Telephone: (415) 293-8308

20                                  *Counsel for Candyman Kitchens Inc.*

21

22

23

24

25

26

27

28

# EXHIBIT A

Int. Cl.: 30

Prior U.S. Cl.: 46

**United States Patent and Trademark Office**

Reg. No. 2,415,707

Registered Dec. 26, 2000

## TRADEMARK
### PRINCIPAL REGISTER

## SANDY CANDY

CAN YOU IMAGINE THAT CONFECTIONS INC. (CALIFORNIA CORPORATION)
1028 E. EDNA PLACE
COVINA, CA 91724

   FOR: CANDY THAT IS EDIBLE SAND ART, IN CLASS 30 (U.S. CL. 46).

FIRST USE 9–5–1996; IN COMMERCE 10–10–1996.

SER. NO. 75–875,031, FILED 12–27–1999.

KARAN CHHINA, EXAMINING ATTORNEY

Int. Cl.: 30

Prior U.S. Cl.: 46

Reg. No. 2,415,707

## United States Patent and Trademark Office    Registered Dec. 26, 2000

## TRADEMARK
### PRINCIPAL REGISTER

## SANDY CANDY

CAN YOU IMAGINE THAT CONFECTIONS INC.
    (CALIFORNIA CORPORATION)
1028 E. EDNA PLACE
COVINA, CA 91724

FIRST USE 9–5–1996; IN COMMERCE 10–10–1996.

SER. NO. 75–875,031, FILED 12–27–1999.

KARAN CHHINA, EXAMINING ATTORNEY

    FOR: CANDY THAT IS EDIBLE SAND ART, IN
CLASS 30 (U.S. CL. 46).

# **<u>EXHIBIT B</u>**

# United States of America

## United States Patent and Trademark Office

# Crime Scene Candy

**Reg. No. 5,670,600**

**Registered Feb. 05, 2019**

**Int. Cl.: 30**

**Trademark**

**Principal Register**

Candyman Kitchens  (FLORIDA CORPORATION)
8749 Ne Jacksonville Rd.
Anthony, FLORIDA 32617

CLASS 30: Candy

FIRST USE 4-30-2009; IN COMMERCE 4-30-2009

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "CANDY"

SER. NO. 88-085,924, FILED 08-21-2018



Director of the United States
Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# **EXHIBIT C**

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

## Trademark/Service Mark Application, Principal Register

### TEAS Plus Application

**Serial Number: 88666939**
**Filing Date: 10/24/2019**

*NOTE: Data fields with the* \* *are mandatory under TEAS Plus. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

---

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **TEAS Plus** | **YES** |
| **MARK INFORMATION** | |
| *MARK | <u>Candy Blood Clots</u> |
| *STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | Candy Blood Clots |
| *MARK STATEMENT | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Candyman Kitchens |
| DBA/AKA/TA/FORMERLY | DBA Candyman Kitchens |
| *STREET | 8749 NE Jacksonville Rd. |
| *CITY | ANTHONY |
| *STATE<br>(Required for U.S. applicants) | Florida |
| *COUNTRY | United States |
| *ZIP/POSTAL CODE<br>(Required for U.S. and certain international addresses) | 32617 |
| EMAIL ADDRESS | CandymanKitchens@gmail.com |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| **LEGAL ENTITY INFORMATION** | |
| *TYPE | CORPORATION |
| * STATE/COUNTRY OF INCORPORATION | Florida |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| *INTERNATIONAL CLASS | 030 |
| *IDENTIFICATION | Candy |

| *FILING BASIS | SECTION 1(a) |
|---|---|
| FIRST USE ANYWHERE DATE | At least as early as 03/24/2011 |
| FIRST USE IN COMMERCE DATE | At least as early as 03/24/2011 |
| SPECIMEN FILE NAME(S) | \\TICRS\EXPORT17\IMAGEOUT 17\886\669\88666939\xml1\ FTK0003.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT 17\886\669\88666939\xml1\ FTK0004.JPG |

## ADDITIONAL STATEMENTS INFORMATION

| *TRANSLATION (if applicable) | |
|---|---|
| *TRANSLITERATION (if applicable) | |
| *CLAIMED PRIOR REGISTRATION (if applicable) | |
| *CONSENT (NAME/LIKENESS) (if applicable) | |
| *CONCURRENT USE CLAIM (if applicable) | |

## CORRESPONDENCE INFORMATION

| *NAME | Candyman Kitchens |
|---|---|
| FIRM NAME | Candyman Kitchens |
| *STREET | 8749 NE Jacksonville Rd. |
| *CITY | ANTHONY |
| *STATE (Required for U.S. addresses) | Florida |
| *COUNTRY | United States |
| *ZIP/POSTAL CODE | 32617 |
| *EMAIL ADDRESS | CandymanKitchens@gmail.com |
| *AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |

## FEE INFORMATION

| APPLICATION FILING OPTION | TEAS Plus |
|---|---|
| NUMBER OF CLASSES | 1 |
| FEE PER CLASS | 225 |
| *TOTAL FEE PAID | 225 |

## SIGNATURE INFORMATION

| *SIGNATURE | /David Klein/ |
|---|---|
| *SIGNATORY'S NAME | David Klein |
| *SIGNATORY'S POSITION | Owner |
| SIGNATORY'S PHONE NUMBER | 352-622-6397 |
| *DATE SIGNED | 10/24/2019 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 88666939**
**Filing Date: 10/24/2019**

## To the Commissioner for Trademarks:

**MARK:** Candy Blood Clots (Standard Characters, see mark)
The literal element of the mark consists of Candy Blood Clots. The mark consists of standard characters, without claim to any particular font style, size, or color.
The applicant, Candyman Kitchens, DBA Candyman Kitchens, a corporation of Florida, having an address of

    8749 NE Jacksonville Rd.
    ANTHONY, Florida 32617
    United States
    CandymanKitchens@gmail.com

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

**For specific filing basis information for each item, you must view the display within the Input Table.**
International Class 030:  Candy

Use in Commerce: The applicant is using the mark in commerce on or in connection with the identified goods/services. The applicant attaches, or will later submit, one specimen as a JPG/PDF image file showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, regardless of whether the mark itself is in the standard character format or is a stylized or design mark. The specimen image file may be in color, and the image must be in color if color is being claimed as a feature of the mark.

In International Class 030, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 03/24/2011, and first used in commerce at least as early as 03/24/2011, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, .
Specimen File1
Specimen File2


The applicant's current Correspondence Information:

    Candyman Kitchens

    Candyman Kitchens

    8749 NE Jacksonville Rd.

    ANTHONY, Florida 32617

    CandymanKitchens@gmail.com (authorized).

**Email Authorization:** I authorize the USPTO to send email correspondence concerning the application to the applicant or the applicant's attorney, or the applicant's domestic representative at the email address provided in this application. I understand that a valid email address must be maintained and that the applicant or the applicant's attorney must file the relevant subsequent application-related submissions via the Trademark Electronic Application System (TEAS). Failure to do so will result in the loss of TEAS Plus status and a requirement to submit an additional processing fee of $125 per international class of goods/services.

A fee payment in the amount of $225 has been submitted with the application, representing payment for 1 class(es).

## Declaration

   ☑ **Basis:**

**If the applicant is filing the application based on use in commerce under <u>15 U.S.C. § 1051(a)</u>:**

- <u>The</u> signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**AND/OR**

**If the applicant is filing the application based on an intent to use the mark in commerce under <u>15 U.S.C. § 1051(b)</u>, § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under <u>18 U.S.C. § 1001</u>, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /David Klein/   Date: 10/24/2019
Signatory's Name: David Klein
Signatory's Position: Owner
Signatory's Phone Number: 352-622-6397
Payment Sale Number: 88666939
Payment Accounting Date: 10/24/2019

Serial Number: 88666939
Internet Transmission Date: Thu Oct 24 12:03:28 EDT 2019
TEAS Stamp: USPTO/FTK-XX.XXX.XX.XXX-2019102412032814
6727-88666939-6101f2f5a84b0ca2e812d66ff4
88d7d89fae577db92e925112422034f996480-CC
-03272769-20191024114529521248

# Candy Blood Clots





# Candy Blood Clots





# **EXHIBIT D**

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 88748048**
**Filing Date: 01/06/2020**

*NOTE: Data fields with the* **\*** *are mandatory under TEAS Plus. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **TEAS Plus** | **YES** |
| **MARK INFORMATION** | |
| **\*MARK** | [BOOGERS](BOOGERS) |
| **\*STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | BOOGERS |
| **\*MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| **\*OWNER OF MARK** | Candyman Kitchens |
| **\*STREET** | 8749 NE Jacksonville Rd. |
| **\*CITY** | Anthony |
| **\*STATE** (Required for U.S. applicants) | Florida |
| **\*COUNTRY** | United States |
| **\*ZIP/POSTAL CODE** (Required for U.S. and certain international addresses) | 32617 |
| **LEGAL ENTITY INFORMATION** | |
| **\*TYPE** | CORPORATION |
| **\* STATE/COUNTRY OF INCORPORATION** | Florida |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| **\*INTERNATIONAL CLASS** | 030 |
| **\*IDENTIFICATION** | Candy; Hard candies |
| **\*FILING BASIS** | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 10/03/2011 |
| FIRST USE IN COMMERCE DATE | At least as early as 10/03/2011 |

| SPECIMEN FILE NAME(S) | \\TICRS\EXPORT17\IMAGEOUT 17\887\480\88748048\xml1\ FTK0003.JPG |
|---|---|
| | \\TICRS\EXPORT17\IMAGEOUT 17\887\480\88748048\xml1\ FTK0004.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT 17\887\480\88748048\xml1\ FTK0005.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT 17\887\480\88748048\xml1\ FTK0006.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT 17\887\480\88748048\xml1\ FTK0007.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT 17\887\480\88748048\xml1\ FTK0008.JPG |
| SPECIMEN DESCRIPTION | Product packaging showing trademark |

## ADDITIONAL STATEMENTS INFORMATION

| | |
|---|---|
| *TRANSLATION (if applicable) | |
| *TRANSLITERATION (if applicable) | |
| *CLAIMED PRIOR REGISTRATION (if applicable) | |
| *CONSENT (NAME/LIKENESS) (if applicable) | |
| *CONCURRENT USE CLAIM (if applicable) | |

## ATTORNEY INFORMATION

| | |
|---|---|
| NAME | Nyall Engfield |
| ATTORNEY BAR MEMBERSHIP NUMBER | XXX |
| YEAR OF ADMISSION | XXXX |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | XX |
| FIRM NAME | Calstrat Law Group |
| STREET | 16950 Via de Santa Fe Suite 5060-107 |
| CITY | Rancho Santa Fe |
| STATE | California |
| COUNTRY | United States |
| ZIP/POSTAL CODE | 92067 |
| PHONE | 760-234-1231 |
| EMAIL ADDRESS | orders@trademarkraft.com |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| OTHER APPOINTED ATTORNEY | Nyall Engfield |

## CORRESPONDENCE INFORMATION

| | |
|---|---|
| *NAME | Nyall Engfield |
| FIRM NAME | Calstrat Law Group |
| *STREET | 16950 Via de Santa Fe Suite 5060-107 |

| | |
|---|---|
| *CITY | Rancho Santa Fe |
| *STATE<br>(Required for U.S. addresses) | California |
| *COUNTRY | United States |
| *ZIP/POSTAL CODE | 92067 |
| PHONE | 760-234-1231 |
| *EMAIL ADDRESS | orders@trademarkraft.com; candymankitchens@gmail.com |
| *AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| **FEE INFORMATION** | |
| APPLICATION FILING OPTION | TEAS Plus |
| NUMBER OF CLASSES | 1 |
| FEE PER CLASS | 225 |
| *TOTAL FEE PAID | 225 |
| **SIGNATURE INFORMATION** | |
| * SIGNATURE | /s/ |
| * SIGNATORY'S NAME | Nyall Engfield |
| * SIGNATORY'S POSITION | Attorney of Record, CA Bar |
| SIGNATORY'S PHONE NUMBER | 760-234-1231 |
| * DATE SIGNED | 01/06/2020 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1478 (Rev 09/2006)
OMB No. 0651-0009 (Exp 02/28/2021)

**Trademark/Service Mark Application, Principal Register**

**TEAS Plus Application**

Serial Number: 88748048
Filing Date: 01/06/2020

## To the Commissioner for Trademarks:

**MARK:** BOOGERS (Standard Characters, see mark)
The literal element of the mark consists of BOOGERS. The mark consists of standard characters, without claim to any particular font style, size, or color.
The applicant, Candyman Kitchens, a corporation of Florida, having an address of
8749 NE Jacksonville Rd.
Anthony, Florida 32617
United States

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

**For specific filing basis information for each item, you must view the display within the Input Table.**
International Class 030:  Candy; Hard candies

Use in Commerce: The applicant is using the mark in commerce on or in connection with the identified goods/services. The applicant attaches, or will later submit, one specimen as a JPG/PDF image file showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, regardless of whether the mark itself is in the standard character format or is a stylized or design mark. The specimen image file may be in color, and the image must be in color if color is being claimed as a feature of the mark.

In International Class 030, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 10/03/2011, and first used in commerce at least as early as 10/03/2011, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, consisting of a(n) Product packaging showing trademark.
Specimen File1
Specimen File2
Specimen File3
Specimen File4
Specimen File5
Specimen File6

The applicant hereby appoints Nyall Engfield. Other appointed attorneys are Nyall Engfield. Nyall Engfield of Calstrat Law Group, is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, and the attorney(s) is located at
16950 Via de Santa Fe Suite 5060-107
Rancho Santa Fe, California 92067
United States
760-234-1231(phone)
orders@trademarkraft.com (authorized).

Nyall Engfield submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.
The applicant's current Correspondence Information:
Nyall Engfield
Calstrat Law Group
16950 Via de Santa Fe Suite 5060-107

Rancho Santa Fe, California 92067

760-234-1231(phone)

orders@trademarkraft.com; candymankitchens@gmail.com (authorized).

**Email Authorization:** I authorize the USPTO to send email correspondence concerning the application to the applicant or the applicant's attorney, or the applicant's domestic representative at the email address provided in this application. I understand that a valid email address must be maintained and that the applicant or the applicant's attorney must file the relevant subsequent application-related submissions via the Trademark Electronic Application System (TEAS). Failure to do so will result in the loss of TEAS Plus status and a requirement to submit an additional processing fee of $125 per international class of goods/services.

A fee payment in the amount of $225 has been submitted with the application, representing payment for 1 class(es).

**Declaration**

☑ **Basis:**
  **If the applicant is filing the application based on use in commerce under <u>15 U.S.C. § 1051(a)</u>:**

- <u>The</u> signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

  **AND/OR**
  **If the applicant is filing the application based on an intent to use the mark in commerce under <u>15 U.S.C. § 1051(b)</u>, § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under <u>18 U.S.C. § 1001</u>, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /s/   Date: 01/06/2020
Signatory's Name: Nyall Engfield
Signatory's Position: Attorney of Record, CA Bar
Signatory's Phone Number: 760-234-1231
Payment Sale Number: 88748048
Payment Accounting Date: 01/06/2020

Serial Number: 88748048
Internet Transmission Date: Mon Jan 06 15:00:25 EST 2020
TEAS Stamp: USPTO/FTK-XX.XXX.XXX.XX-2020010615002547
6424-88748048-7002e5fa457c363da8c11ac688
4617d9fc5acf549852fb473e88df9df55e2321a7
-CC-00230767-20200106145147633940

# BOOGERS

http://www.niftycandy.com/weirdcandy.html
Go

80 captures
30 Apr 2009 - 2 Feb 2019

MAR APR JUN
23
2012 2013 2014



Ghost Boogers are crunchy white candy nuggets with a delicious mystery fruit flavor. Ghost Boogers are availalbe in bulk or in tubs of 36

Green Apple Zombie Boogers are a fun Zombie candy treat! Zombie Boogers are packaged in a nifty vial for easy eating. Zombie Boogers are availalbe in bulk or in tubs of 36

http://www.niftycandy.com/weirdcandy.html    Go

80 captures
30 Apr 2009 – 2 Feb 2019

MAR  MAY  SEP
◀ 10 ▶
2014  2015  2016



PIG BOOGERS

GUMMY EAR POPS

GHOST BOOGERS

GUMMY BRAIN POPS

GUMMY ORGANS IN A JAR

UNICORN BOOGERS

ZOMBIE BOOGERS

ZOMBIE FIRST AID KIT

http://www.niftycandy.com/weirdcandy.html   Go   APR **JUN** NOV   ◄ **07** ►   2010 **2012** 2013

80 captures
30 Apr 2009 - 2 Feb 2019

Yummy fruit flavored unicorn boogers are a weird and wacky candy that is fun and tasty.



Ghost Boogers are crunchy white candy nuggets with a delicious mystery fruit flavor.

http://www.niftycandy.com/weirdcandy.html                                Go

JAN  APR  JUN
◄   19   ►
2010 2012 2013

80 captures
30 Apr 2009 - 2 Feb 2019

Funky Fizz comes packaged in test tubes and large bottles for retail sale. Funky Fizz is available in regular and in sugar free.



New Pig Boogers are delicious bacon flavored candy crunchy nuggets!



New Dragon Boogers are super crazy hot! Even though they are small pieces of candy, they pack a tremendous punch of fire! They are made with Bhut Jolokia chili pepper, which has been recognized by Guinness World Records as the hottest pepper in the world! Make sure to have a glass of water near by when eating these!



YouTube

Dragon Boogers Ghost Pepper (Bhut Jolokia) Flavored Candy, Nifty Candy



13/16

Great for retail sale, you can put your logo on any of our fun Candy Boogers. Options for customizing include Zombie Boogers, Unicorn Boogers, Ghost Boogers, and Pig Boogers.

BOOGERS

http://www.niftycandy.com/weirdcandy.html   Go   MAR **APR** JUN

80 captures
30 Apr 2009 - 2 Feb 2019

2012 **23 2013** 2014



MYSTERY FRUIT FLAVOR

Ghost Boogers are crunchy white candy nuggets with a delicious mystery fruit flavor. Ghost Boogers are availalbe in bulk or in tubs of 36

Green Apple Zombie Boogers are a fun Zombie candy treat! Zombie Boogers are packaged in a nifty vial for easy eating. Zombie Boogers are availalbe in bulk or in tubs of 36

http://www.niftycandy.com/weirdcandy.html     Go     MAR  MAY  SEP
80 captures                                                    ◀ 10 ▶
30 Apr 2009 – 2 Feb 2019                                    2014 2015 2016



PIG BOOGERS          GUMMY EAR POPS          GHOST BOOGERS          GUMMY BRAIN POPS

GUMMY ORGANS IN A          UNICORN BOOGERS          ZOMBIE BOOGERS          ZOMBIE FIRST AID KIT
JAR

http://www.niftycandy.com/weirdcandy.html          Go    APR **JUN** NOV

80 captures
30 Apr 2009 - 2 Feb 2019                                          ◄ **07** ►
                                                              2010 **2012** 2013

Yummy fruit flavored unicorn boogers are a weird and wacky candy that is fun and tasty.



Ghost Boogers are crunchy white candy nuggets with a delicious mystery fruit flavor.

http://www.niftycandy.com/weirdcandy.html    Go    JAN **APR** JUN
80 captures                                    ◀ **19** ▶
30 Apr 2009 - 2 Feb 2019                          2010 **2012** 2013

Funky Fizz comes packaged in test tubes and large bottles for retail sale. Funky Fizz is available in regular and in sugar free.



New Pig Boogers are delicious bacon flavored candy crunchy nuggets!



New Dragon Boogers are super crazy hot! Even though they are small pieces of candy, they pack a tremendous punch of fire! They are made with Bhut Jolokia chili pepper, which has been recognized by Guinness World Records as the hottest pepper in the world! Make sure to have a glass of water near by when eating these!



YouTube

Dragon Boogers Ghost Pepper (Bhut Jolokia) Flavored Candy, Nifty Candy



▶ ◀ 13/16 ▶ ⊗

Great for retail sale, you can put your logo on any of our fun Candy Boogers. Options for customizing include Zombie Boogers, Unicorn Boogers, Ghost Boogers, and Pig Boogers.

# EXHIBIT E

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA982112** |
|---|---|
| Filing date: | **06/20/2019** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

# Notice of Opposition

Notice is hereby given that the following party opposes registration of the indicated application.

## Opposer Information

| Name | Candyman Kitchens | | |
|---|---|---|---|
| Entity | Corporation | Citizenship | Florida |
| Address | 8749 NE Jacksonville Rd<br>Anthony, FL 32617<br>UNITED STATES | | |

| Correspondence information | Nyall Engfield<br>TrademarKraft<br>500 Westover Dr Suite 12298<br>Sanford, NC 27330<br>UNITED STATES<br>orders@trademarkraft.com<br>6132033700 |
|---|---|

## Applicant Information

| Application No | 88299940 | Publication date | 05/28/2019 |
|---|---|---|---|
| Opposition Filing Date | 06/20/2019 | Opposition Period Ends | 06/27/2019 |
| Applicant | Sweets Indeed, LLC<br>1032 E Edna Place<br>Covina, CA 91724<br>UNITED STATES | | |

## Goods/Services Affected by Opposition

| Class 030. First Use: 2017/09/22 First Use In Commerce: 2017/12/09<br>All goods and services in the class are opposed, namely: Candy |
|---|

## Grounds for Opposition

| Applicant not rightful owner of mark for identified goods or services | Trademark Act Section 1 |
|---|---|

| Attachments | BOOGERS NOTICE OF OPPOSITION.pdf(196957 bytes ) |
|---|---|

| Signature | /nyall engfield/ |
|---|---|
| Name | Nyall Engfield |
| Date | 06/20/2019 |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE BEFORE**
**THE TRADEMARK TRIAL AND APPEAL BOARD**

In re Application No. 88/299,940 for the mark BOOGERS

Candyman Kitchens

          Opposer                 Opp. No. _____

          V.

Sweets Indeed, LLC

          Applicant

**NOTICE OF OPPOSITION**

Candyman Kitchens ("Opposer") believes that it will be damaged by the registration of the above identified mark and hereby opposes registration of the mark in all classes listed in the application, pursuant to the provisions of Section 13 of the Trademark Act of 1946, 15 U.S.C. §1063.

As grounds for the opposition, it is alleged that:

1. Opposer is the owner of all right, title and interest in and to the mark BOOGERS used alone or in combination with a design (collectively, "Opposer's BOOGERS Marks") for a variety of confectionary and candy;

1

2. Opposer's marks are PIG BOOGERS, UNICORN BOOGERS, ZOMBIE BOOGERS, GHOST BOOGERS and DRAGON BOOGERS, among other BOOGERS marks

3. Since prior to the acts complained of in this notice, Opposer established common law rights in Opposer's BOOGERS Marks through continuous use on its candy products.

4. Opposer Candyman Kitchens was founded in March 2017 in Florida and Opposer's BOOGERS Marks have been used by Opposer continuously since 2011 in connection with the sale of confectionary and candy since then.

5. As a result, Opposer's BOOGERS Marks have become a distinctive indicator of the origin of Opposer's goods and as a valuable symbol of Opposer's valuable goodwill.

6. Opposer's BOOGERS Marks have been used across the US and have been continuously in commerce since long prior to the filing date of Application No. 88/299,940 or any date of first use that may be alleged by Applicant.

7. In March 2017, Can You Imagine That! Confections Inc. and Applicant signed an Asset Purchase Agreement for Opposer to sell candy-making equipment to Applicant. Trademarks were specifically and explicitly excluded from the purchased assets.

8. Can You Imagine That! Confections Inc. assigned all its intellectual property rights to Candyman Kitchens in 2017.

9. Notwithstanding Opposer's prior established rights in Opposer's BOOGERS Marks, Applicant filed the above mentioned application seeking to register BOOGERS for candy in Class 030.

10. Applicant is selling candy products under the names DINOSAUR BOOGERS, FLAMINGO BOOGERS, MERMAID BOOGERS, NARWHAL BOOGERS, PUPPY BOOGERS, SLOTH BOOGERS, SUPERHERO BOOGERS, TRUMP BOOGERS and UNICORN BOOGERS.

2

11. Applicant's mark and proposed goods are so similar to Opposer's BOOGERS Marks and Opposer's goods as to create a likelihood of confusion. Applicant's product is on the left, while Opposer's product is on the right.




12. Upon seeing Applicant's mark, members of the public are likely to be confused, mistaken, or misled into believing that Applicant has obtained a license from Opposer or that Applicant is otherwise affiliated or connected with, or sponsored by Opposer, or that Opposer has endorsed Applicant's goods.

13. On information and belief, Applicant has used or intends to use the mark at issue with a deliberate intent to cause confusion and to cause consumers to believe that it is associated with or approved or endorsed by Opposer.

14. Upon information and belief, Applicant filed the application with knowledge of Opposer as the rightful owner of the BOOGERS trademarks, and the knowledge that the signed Agreement specifically excluded trademarks, including the Opposer's BOOGERS marks.

15. Upon information and belief, Applicant adopted or intends to adopt its alleged mark with a deliberate intent to create the false impression that Applicant or its goods are

licensed, endorsed or approved by Opposer.

16. Upon information and belief, Applicant adopted or intends to adopt its alleged mark with a deliberate intent to take advantage of the goodwill established by Opposer through its use of Opposer's BOOGERS Marks.

## LIKELIHOOD OF CONFUSION - §2(d)

17. The mark that Applicant seeks to register so resembles Opposer's BOOGERS Marks that the use and registration thereof is likely to cause confusion, mistake and deception as to the source or origin of Applicant's goods and will injure and damage Opposer and the goodwill and reputation symbolized by Opposer's BOOGERS Marks.

18. Likelihood of confusion is enhanced by the fact that Applicant's goods are identical to or so related to the goods sold under Opposer's BOOGERS Marks that the public is likely to be confused, to be deceived and to assume erroneously that Applicant's goods and services are those of Opposer or that Applicant is in some way connected with, licensed or sponsored by or affiliated with Opposer, all to Opposer's irreparable damage.

19. Likelihood of confusion in this case is enhanced by the fact that the same individuals that might purchase Applicant's goods are prospective purchasers of products sold under Opposer's BOOGERS Marks.

19. Likelihood of confusion in this case is enhanced by the fact that Applicant's alleged mark BOOGERS is virtually identical to Opposer's BOOGERS Marks.

4

WHEREFORE, Opposer prays that this opposition be sustained and that registration be denied.

Candyman Kitchens

Dated: June 20, 2019

By: /s/ Nyall Engfield

Law Offices of Nyall Engfield

500 Westover Dr. Suite 12298

Sanford NC 27330

(613) 203-3700

orders@trademarkraft.com

Attorney for Opposer

# EXHIBIT F

August 18, 2017

Dear Fellow Candy Lover,

Greetings, my name is Marie Dannettelle, Founder and Chief Candy Officer of Sweets Indeed, LLC.

I started Sweets Indeed in 2009 as a family run, custom candy and dessert station catering business. The business has grown over the years, allowing us to expand into the retail market and we began creating our own, unique confections.

Recently, my company acquired the candy manufacturing facility formerly belonging to "Can You Imagine That," also known as "Nifty Candy Company." This letter is part of an ongoing effort to reach out to former customers of Can You Imagine That and ensure you are aware that we are continuing to make many of the same products as those that you were previously ordering. We have also added new and improved confections in the following categories:

- Panned candy
- Powder candy
- Liquid candy
- Gummy candy

In addition to creating branded products of our own, we have the ability to offer a wide range of novelty candy products, private labeling and contract manufacturing if you are looking for something more customized.

Our products are excellent for dessert toppings, bulk candy, packaged retail, wholesale, and have also been used for various fundraising opportunities.

In order to help the transition and get you set up in our new system, I would love to offer you a one-time 20% discount on your first order with Sweets Indeed, LLC.

This offer expires September 10th, 2017 but can be used on any size order.

To learn more about our company, obtain our 2017 product catalog and to place an order, please call me directly at 626-335-4010, or email me at marie@sweetsindeed.com. I will be happy to assist you!

I look forward to working with you.

Sweet Regards,

Marie Dannettelle
Founder, Chief Candy Officer